**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Guadalupe Javier**
**HEREDIA–FERNANDEZ,**
**Defendant-Appellant.**

**Nos. 84–5137/5029.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1984.

Decided April 2, 1985.

Pat Swan, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Kenneth D. Noel, San Diego, Cal., for defendant-appellant.

Before NELSON, BOOCHEVER, and REINHARDT, Circuit Judges.

NELSON, Circuit Judge:

Guadalupe Javier Heredia-Fernandez ("Heredia") appeals from his misdemeanor conviction for entering the United States illegally, in violation of 8 U.S.C. § 1325, and felony conviction for entering the United States illegally after having been deported, in violation of 8 U.S.C. § 1326. He

contends on appeal that the district court erroneously ruled that his confessional statements were voluntary and admissible into evidence, and that in the hearing on that issue the district court impermissibly denied his counsel an opportunity for argument after the presentation of evidence. Neither of these objections has merit, and so we affirm the convictions.

Heredia also appeals from an order of the district court which ruled on his Fed.R. Crim.P. 35 motion to correct an illegal sentence. We find no error in the course followed by the district court and no illegality in the resulting sentence, and consequently affirm the ruling of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 22, 1983, during his daily check of local jails for suspected illegal aliens, Border Patrol Agent Curtis Shute came upon appellant Heredia in Riverside County Jail. After transporting Heredia to the Indio Border Patrol Station, Agent Shute handed him a form on which appeared, written in Spanish, a statement of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The form also contained a printed waiver, which provided (as translated into English):

> I've read the declaration of my rights and understand my rights. I'm ready to give a declaration and answer questions. For the time being I do not desire an attorney. I understand what I am doing.

No one has made promises [ ] or granted any favors.

Heredia was asked to read this form, after which he stated that he understood his rights. Although the form was in Spanish, and Heredia apparently could speak Spanish, the conversation between Agent Shute and Heredia took place in English. When asked whether he was willing to sign the waiver, Heredia responded by signing the document. He then told Agent Shute that he had last entered the United States in July 1982, near Calexico, California.

Three days later, Heredia was again transported to the Indio station for questioning, this time by Border Patrol Agent James Upson. Agent Upson reminded Heredia that he had already signed the *Miranda* form. Heredia stated, in response to Upson's questions, that he still remembered and understood his rights, and indicated that he did not need the *Miranda* warnings to be read to him. Heredia informed Agent Upson that he was a citizen of Mexico and that he had last entered the United States by "jumping the line" near Calexico on July 17, 1982.

Heredia had been lawfully deported to Mexico on July 15, 1982, shortly prior to his illegal reentry.

He was subsequently indicted by a grand jury, in December, 1983, on two counts: (1) that he "did knowingly and unlawfully enter the United States ... at a ... time and place ... other than as designated by immigration officials of the United States ...," in violation of 8 U.S.C. § 1325[1]; and (2) that he unlawfully entered the United States after having been arrested and deported, in violation of 8 U.S.C. § 1326.[2]

---

**1.** 8 U.S.C. Section 1325 provides that

Any alien who (1) enters the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offenses, be guilty of a misdemeanor and upon conviction thereof be punished by imprisonment for not more than six months, or by a fine of not more than $500, or by both, and for a subsequent commission of any such offenses shall be guilty of a felony and

upon conviction thereof shall be punished by imprisonment for not more than two years, or by a fine of not more than $1,000, or both.

**2.** 8 U.S.C. Section 1326 provides that

Any alien who—

(1) has been arrested and deported or excluded and deported, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to

After Heredia's jury trial commenced, a hearing was held by the district court pursuant to 18 U.S.C. § 3501, to determine whether Heredia's confessions to Agents Shute and Upson were made voluntarily. Following the presentation of evidence at that hearing, the district court denied a request by Heredia's counsel "briefly to be heard on the issues," and ruled that the confessions had been voluntary.

The trial resumed, and on January 12, 1984, the jury returned a verdict finding Heredia guilty of the lesser included misdemeanor charge of illegal entry on count one, and guilty of the felony of illegal reentry after being deported, as charged in count two.

On February 13, 1984, judgment was entered and Heredia was sentenced to concurrent terms of imprisonment of six months on count one and two years on count two. He filed a notice of appeal the next day.

About 2½ months later, on April 25, 1984, after Heredia had been in federal custody for a total of approximately six months, he filed a motion pursuant to Fed.R.Crim.P. 35 to correct an illegal sentence. On June 11, following a hearing, the district court entered an order vacating the six-month term on count one but not vacating the two-year term on count two. On the following day, Heredia filed his notice of appeal from this final order.

### ISSUES PRESENTED

1. Did the district court commit clear error in finding, at the close of the voluntariness hearing, that Heredia's confessions were voluntary?

2. Was Heredia deprived of assistance of counsel or due process of law by virtue of the district court's decision not to hear argument of counsel following the presentation of evidence in the voluntariness hearing?

3. Did the district court improperly rule on Heredia's Fed.R.Crim.P. 35 motion for the vacating of an illegal sentence?

A. Did the district court impermissibly modify the original sentence by vacating the shorter, six-month concurrent term despite the fact that Heredia had already been in custody for six months?

B. Does the final result of this modification constitute an illegal sentence?

### DISCUSSION

### I. VOLUNTARINESS OF HEREDIA'S CONFESSIONS

After conducting the voluntariness hearing, at which Border Patrol Agents Shute and Upson both testified, the district court ruled that Heredia's incriminating statements made to them had been voluntary. The district court's ruling finds more than ample support in the record.

Voluntariness must be established by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *U.S. v. O'Looney,* 544 F.2d 385, 389 (9th Cir.), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976). One precondition for a voluntary custodial confession is a voluntary waiver of *Miranda* rights, and language difficulties may impair the ability of a person in custody to waive these rights in a free and aware manner. *See United States v. Gonzales,* 749 F.2d 1329, 1335–36 (9th Cir.1984); *United States v. Martinez,* 588 F.2d 1227, 1235 (9th Cir.1978).

All the evidence introduced during the hearing tended to show that Heredia knowingly and intelligently waived his *Miranda* rights and offered his inculpatory statements voluntarily. Heredia read the form describing his *Miranda* rights and claimed to understand these rights, subsequently signing the waiver when asked if he was willing to do so. He later said he remembered and still understood his rights,

an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

and indicated that he did not wish to have them read to him. He appeared to understand all that was taking place. Moreover, Heredia had been arrested approximately 15 times in the preceding eight to ten years, and so might fairly have been presumed to be familiar with *Miranda* rights procedures.

Heredia offers two specious arguments in support of his contention that the evidence of voluntariness was insufficient. First, he makes the philosophical argument that Agent Shute's testimony could not establish that the *Miranda* form was in fact read by Heredia because "it is impossible to testify that the person actually read the document." By the same token, however, it would likewise be impossible to attest that someone was in fear or pain, or that a person understood what he was saying; yet the abstract plausibility of such epistemological skepticism does not justify actual doubts in either everyday life or the law which governs it. *See* L. Wittgenstein, *Philosophical Investigations* ¶¶ 303, 246–50, 84 (3d ed.). Second, Heredia insists that "[u]nanswered is the question as to the ability of defendant to read Spanish," the language in which the *Miranda* form was written, because conversations between Heredia and the Agents took place in English. But surely Heredia's statements in English—a language in which he clearly was competent—that he understood the Spanish document, were probative of his ability to understand Spanish as well. Neither of Heredia's arguments has merit.

## II. THE DISTRICT COURT'S REFUSAL TO PERMIT ARGUMENT BY DEFENSE COUNSEL AT THE CLOSE OF THE VOLUNTARINESS HEARING

Both sides were offered the opportunity to present evidence during the voluntariness hearing. The prosecution offered the testimony of the two Border Patrol Agents, each of whom was cross-examined by Heredia's counsel. No witnesses were called on behalf of Heredia. Following the presentation of evidence, the district court denied the request of Heredia's counsel for an opportunity to argue the issue orally before the bench. Heredia now contends that this denial undermined his rights to effective assistance of counsel and due process of law. We find that the district court committed no reversible error.

As a preliminary matter, Heredia is not properly alleging ineffective assistance of his counsel, who he argues "cannot be faulted" but, rather, error on the part of the district judge. We have never viewed such allegations as supplying the necessary foundation for an ineffective assistance of counsel claim, and no not do so now.

Nonetheless, Heredia did possess a constitutional right under the Fifth Amendment's due process clause to have "a fair hearing and a reliable determination on the issue of voluntariness." *Jackson v. Denno*, 378 U.S. 368, 376–77, 84 S.Ct. 1774, 1781, 12 L.Ed.2d 908 (1964). "The guarantees of due process call for a 'hearing appropriate to the nature of the case.' " *United States v. Raddatz*, 447 U.S. 667, 677, 100 S.Ct. 2406, 2413, 65 L.Ed.2d 424 (1980) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); *see also id.* at 679 ("the process due at a suppression hearing may be less demanding and elaborate than the protections accorded the defendant at the trial itself").

The trial judge has traditionally enjoyed a wide discretion in the management of proceedings before the court. *See, e.g., Moore v. United States*, 598 F.2d 439, 442 (5th Cir.1979) ("a federal judge ... is a common law judge having that authority historically exercised by judges in the common law process ..., and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion"); *United States v. Dinitz*, 538 F.2d 1214, 1219 (5th Cir.1976) ("Since attorneys are officers of the courts before which they appear, such courts are necessarily vested with the authority, within certain limits, to control attorneys' conduct.") *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977);

*U.S. v. Cole*, 491 F.2d 1276, 1278 (4th Cir.1974) ("It is, of course, settled beyond doubt that in a federal court the judge has the right, and often an obligation, to interrupt the presentations of counsel in order to ... insure that the trial proceeds efficiently and fairly.")

■ The evidence adduced at the hearing failed completely to support Heredia's position. More important, it is clear from the record before us that there was no substantial argument that counsel could have presented. While it certainly would have been preferable for the district court to have permitted Heredia's counsel to be heard, if only briefly, on the issue of voluntariness, its refusal to do so did not, under the circumstances, violate Heredia's constitutional rights.

## III. MODIFICATION OF SENTENCE

In his Fed.R.Crim.P. 35 motion to correct an illegal sentence, Heredia contended that because his convictions for violations of 8 U.S.C. §§ 1325 and 1326 arose out of a single act (his reentry into the United States), the concurrent terms of six months and two years, respectively, to which he was sentenced constituted an illegal cumulation of punishment. The district court responded by vacating the six-month portion. Heredia insists that, in light of the fact that he had already spent six months in federal custody as of the date of filing of his Rule 35 motion and had therefore by then completely served the six-month term, the district court was bound to vacate the two-year term instead, thereby releasing him from confinement.

We note that Heredia does not challenge his two convictions. Nor is the validity of the original sentence of concurrent terms an issue which is now before us. Consequently, we offer no judgments on these matters. We need merely assess the lawfulness of the district court's modification of sentence and of the result of that modification. Finding no impropriety in either, we affirm the ruling of the district court.

*Standard of Review*

■ The legality of a sentence is a question of law which we examine *de novo* on appeal. *U.S. v. McCrae*, 714 F.2d 83, 84 (9th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). The lawfulness of the district court's modification of sentence also presents a question of law warranting *de novo* review. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A. *The District Court's Modification of Heredia's Sentence Was Not Unlawful*

■ The two circuits which have considered the question have affirmed the power of a sentencing court to vacate the shorter of two concurrent terms in a criminal sentence even after a defendant has served a period of confinement greater than or equal to the length of the vacated term. *Hardy v. United States*, 292 F.2d 192 (8th Cir.1961); *United States v. Leather*, 271 F.2d 80, 83–86 (7th Cir.1959), *cert. denied*, 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960).

The Eighth Circuit, in *Hardy v. United States*, faced a situation indistinguishable from the present case. The prisoner, serving concurrent terms of 10 and 20 years, waited until 10 years of his imprisonment had elapsed before filing a motion to correct an illegal sentence, and the district court vacated the 10 year sentence. Affirming, the court of appeals "upheld the right of the trial court ... to vacate the shorter sentence, even though the defendant had by that time been confined for a period equal to its length." 292 F.2d at 194. *Hardy* effectively limited an earlier Eighth Circuit case, *Holbrook v. United States*, 136 F.2d 649, 652 (8th Cir.1943), upon which Heredia places great reliance, to at most only cases involving consecutive sentences. The Seventh Circuit, after explicitly considering this issue, has similarly concluded that confinement for the period of a concurrent term does not preclude a sentencing court from vacating that concurrent term. *United States v. Leather, supra.*

We find these cases persuasive. While never before confronting this issue directly, we have previously acted in accordance with the principles articulated in *Hardy* and *Leather* by setting aside multiplicitous concurrent sentences notwithstanding their having been fully served. *See Clermont v. United States,* 432 F.2d 1215 (9th Cir.1970), *cert. denied,* 402 U.S. 997, 91 S.Ct. 2182, 29 L.Ed.2d 163 (1971). We now find that the expiration of Heredia's shorter concurrent term did not prevent the district court from lawfully vacating that term.

In his argument that the district court lacked the power to vacate his six-month sentence, Heredia relies substantially upon *United States v. Edick,* 603 F.2d 772, 777–78 (9th Cir.1979). *Edick* is inapplicable because it involved consecutive sentences, not concurrent ones. The two types of situation present very different legal considerations and practical implications, and we choose not to extend *Edick* beyond its appropriate context. Heredia suffered no adverse practical consequences as a result of serving a six-month term concurrently with a part of the longer term. He would have been treated in the identical manner during that six-month period whether or not the shorter of the two concurrent terms had been imposed. Moreover, vacating the six-month sentence removed whatever adverse collateral consequences may have existed. It was thus of absolutely no practical significance that Heredia's shorter concurrent term was vacated after rather than before he fully served it, and we decline to draw a delicate theoretical distinction where there is no practical counterpart. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *United States v. DiFrancesco,* 449 U.S. 117, 135, 101 S.Ct. 426, 436, 66 L.Ed.2d 328 (1980) (quoting *Bozza v. United States,* 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947)), *quoted in United States v. Hagler,* 709 F.2d 578, 579 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 282, 78 L.Ed.2d 260 (1983).

In sum, we find that no legal obstacle stood in the way of the district court's decision to vacate Heredia's six-month pris-

on term, despite the fact that Heredia, by the time his Rule 35 motion to correct sentence was filed, might already have completely served that prison term.

**B.** *The Resulting Sentence is Not Illegal*

■ The district court modified Heredia's sentence by vacating the concurrent term on count one, leaving intact only the two year term of imprisonment on count two. The statutory basis for the conviction on count two, 8 U.S.C. § 1326, provides for punishment "by imprisonment of not more than two years, or by a fine of not more than $1,000, or both."

"[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Dorszynski v. United States,* 418 U.S. 424, 431, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974); *United States v. Lopez-Gonzalez,* 688 F.2d 1275, 1276 (9th Cir.1982). Heredia's sentence is within statutory limits. We find no illegality in the sentence as modified.

## CONCLUSION

Heredia's contentions on appeal are without merit. Consequently, the judgments of the district court are

AFFIRMED.