**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Stephanie Petra-Georgia SHORT, Defendant-Appellant.**

No. 85–5494.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 13, 1986.

Decided May 5, 1986.

Teri Hasenour (argued), Louisville, Ky., for defendant-appellant.

R. Kent Westberry (argued), Louisville, Ky., for plaintiff-appellee.

Before MERRITT and WELLFORD, Circuit Judges and EDWARDS, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this federal assimilative crimes case arising at the Army Base at Fort Knox, Kentucky, the defendant, Stephanie Petra-Georgia Short, appeals her conviction and 20 year sentence for aiding and abetting her husband's sexual abuse of her three-year-old daughter in violation of 18 U.S.C. §§ 2, 13 and Kentucky Revised Statutes § 510.070. The issues concern the admissibility of her incriminating statements given on the evening of September 24, 1984, and the next morning and the testimony of a social worker about the behavior of the daughter. We hold that the social worker's observations were admissible but that the prosecution did not carry its burden of showing that the incriminating statements were admissible under Rule 104, Federal Rules of Evidence.

### I.

Short, a West German national, was arrested on September 25, 1984, pursuant to a criminal complaint which alleged that she aided and abetted her husband, Timothy Short, a member of the armed forces, in the act of deviate sexual intercourse[1] with her three-year-old daughter, Diana. The record reveals that Short had recently married her husband, had only been in this country for about three months, was not fluent in English, could not drive and had no friends here.

Sometime prior to her arrest the Army received information from a babysitter for the Shorts' two children. She told the Criminal Investigation Department (CID) at Fort Knox, Kentucky that she believed the Shorts were sexually abusing their daughter. The babysitter said that the defendant said that she knew her husband was engaged in sexual activity with her daughter but that there was nothing she could do about it.

On September 24, 1984, one day before Short was arrested, her husband was arrested. CID agents and Army MPs took her and her two children to an army hospital on the base for examination. While there, Margaret Farmer of the Social Services division of the hospital interviewed the daughter, Diana, and Mrs. Short.

Farmer testified at the trial that she interviewed Diana first, using two anatomically correct dolls; and "[d]uring the interview Diana identified the male genitals as 'little boy,'" and "began moving her fingers and hands over the area depicted as the penis and then abruptly moved the male doll to her mouth and placed her mouth over the genital area." (Appellee's Brief, at 3.)

After Farmer concluded her interview with Diana she interviewed the defendant at the Army Hospital. One or more CID agents were present during the interview. Although CID agents brought Short in from her home for the interview, it is undisputed that she was not given any *Mi-*

---

**1.** 18 U.S.C. § 13 adopts state law on military bases for the punishment of crimes.

The Kentucky Penal Code provides that a person is guilty of sodomy in the first degree when:
(a) He [sic] engages in deviate sexual intercourse with another person by forcible compulsion; or
(b) He engages in deviate sexual intercourse with another person who is incapable of consent because he [sic]:

(i) Is physically helpless; or
(ii) Is less than twelve years old.
K.R.S. § 510.070
In Kentucky "deviate sexual intercourse" is defined as:
any act of sexual gratification between persons not married to each other involving the sex organs of one person and the mouth or anus of another.
K.R.S. § 510.010(1)

*randa* [2] warnings or otherwise advised of her rights or the consequences of her statements. During the trial Farmer testified that Short told her she thought

> "it was kind of cute seeing her little hands on his penis" (TR 78). Appellant also told Farmer that she had seen Dianna [sic] "sitting on top of the area where his [Timothy Short's] penis was and that she noticed that he did show some signs of getting excited from having this contact with the child" (TR 79). Farmer testified that the appellant had shown Dianna how to masturbate Timothy Short (TR 79).

(Appellee's Brief, at 3)

Early the following morning, while her husband was in custody and her children remained at the hospital, Short was arrested at home. She was transported by CID and FBI agents to Louisville—a trip which took some 55 minutes. During the course of the trip Short gave an oral statement to the agents. No recording device was used to make a record of the statement, nor did the agents obtain a written *Miranda* waiver. The agents testified at trial that they gave Short the proper verbal *Miranda* warnings, and even took extra care to explain in "simple" English what her rights were.

> According to the agents Short told them: that on approximately September 15, 1984, Dianna came into the bedroom of Timothy Short and the appellant while the appellant was engaging in fellatio with Timothy Short (TR 96). Appellant then showed Dianna how to engage in fellatio with Timothy Short (TR 96). Dianna engaged in fellatio with Timothy Short for a period of time, but Timothy Short did not ejaculate (TR 97). On one occasion when Dianna was engaged in the act of fellatio with Timothy Short, Dianna got a small amount of ejaculate on her lips (TR 99). Appellant and her husband thought it was amusing (TR 99).

(Appellee's Brief, at 4.) Short then made an initial appearance before Magistrate George J. Long. Magistrate Long adjourned the proceedings, however, when Short stated she did not understand what was going on. A German language interpreter was appointed for Short. Short was subsequently transferred to the Federal Corrections Institute in Lexington where she remained until she gave birth to a third child. The District Court, Judge Ballantine, found Short competent to stand trial on March 26, 1985. A trial was held on May 22 and 23, 1985. At the trial, the District Court admitted the incriminating statements over defendant's objections. Short was found guilty and sentenced to 20 years imprisonment.

## II.

■ We consider first Short's contention that Farmer's testimony about the interview with Diana should have been excluded as overly prejudicial under Federal Rules of Evidence 402 and 403. The District Court admitted the testimony as an exception to the hearsay rule under Rule 804(b)(5), providing for statements "not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness." The district judge put Diana on the stand to determine her ability to testify. At the end of their exchange the judge said:

> I will confess that my cross-examination has not been the most searching I have ever seen, but I think I've done the best I can with her, and I think she has no idea what I am talking about.

(JA, at 107.) The judge found Diana was unavailable; Short's counsel argues that Diana was obviously incompetent, not unavailable.

We need not decide whether or not Diana was an unavailable witness. Normally, testimony about conduct is not hearsay at all, as Wigmore points out:

> a ... chief sort of evidence for proving that mental state which is termed Knowledge, Belief, or Consciousness, consists of conduct of the person to whom the

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

mental state is attributed. In this sort of evidence, we argue from an observed effect—conduct—to the probable cause—a specific mental state.

2 Wigmore on Evidence § 265.

A review of Farmer's testimony reveals that she largely confined herself to describing Diana's *behavior* while playing with the anatomically correct dolls. (JA 110–113.)

McCormick notes that testimony about conduct is sometimes controversial because the conduct described is, in effect, treated as an "implied assertion." McCormick concludes that a "satisfactory resolution [of conduct as an "implied assertion" problem] can be had only by making an evaluation in terms of the danger which the hearsay rule is designed to guard against, *i.e.*, imperfections of perception, memory, and narration." McCormick on Evidence § 250 at 598–99 (2d ed. 1972).

Farmer's testimony about Diana's conduct was admitted to support the inferences that Diana, a three year old, had knowledge of oral sex with a man and had engaged in oral sex, the act her mother is charged with abetting. "Ordinarily, experience usually suffices, without controversy, to tell us whether the inference [to be drawn from the conduct] is at least a fairly possible one, and therefore whether the evidence is admissible." 2 Wigmore on Evidence, § 266.

"Ordinary experience" suggests that Diana would not have engaged in this conduct absent some similar prior experience. The sincerity of her conduct is not a danger. Her memory and perception are not the problem. The problem is the meaning of the conduct and the inferences to be drawn. Language and conduct both share this ambiguity. It is not a particular danger of hearsay. Under these circumstanc-

es we hold that Farmer's testimony as to Diana's conduct was not hearsay.

### III.

Short claims that both her statement to Farmer on September 24, and her confession to the government agents the next morning, should have been suppressed. We consider first her contention that her interview with Farmer was in fact a custodial interrogation. Police officers picked up Short and took her and her children to a government facility shortly after her husband was arrested. The record does not indicate that police gave them a choice about leaving their home. CID agents were present during the "interview." They took her to the office of Farmer, an employee of the federal government, who posed all the questions.

It is clear from the record before us, and the parties now agree, that Short did not receive *Miranda* warnings before her interview with Farmer, but this fact was not made clear to District Judge Ballantine. On the contrary, the prosecutor mistakenly asserted that Short *had* been informed of her *Miranda* rights.[3] Although it appears that this was a good faith error, it is now clear that the government failed to meet its burden of proof with respect to the first confession.

■ Both the prosecutor and Judge Ballantine appear to have been under the impression that the defendant must prove involuntariness or the lack of a valid *Miranda* waiver.[4] This is incorrect. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court stated that:

[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards

---

**3.** The prosecutor represented to the court that "the rights that were read to [Short] were read before the confession was given to Mrs. Farmer...." JA at 115.

**4.** In denying Short's motion to suppress the second confession Judge Ballantine said, "The

Court's heard the evidence and is convinced that the United States, *assuming the burden that it did not have,* has established ... that [Short] understood her *Miranda* rights...." JA at 70. (emphasis supplied.)

effective to secure the privilege against self-incrimination. 384 U.S. at 444, 86 S.Ct. at 1612.

More specifically, the Court explained:

since the State is responsible for establishing the isolated circumstances under which interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders. 384 U.S. at 475, 86 S.Ct. at 1628.

In *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972), the Supreme Court held that the prosecution must bear the burden of establishing the admissibility of a confession. 404 U.S. at 486, 92 S.Ct. at 625. Additionally, this court has noted that Rule 104 of the Federal Rules of Evidence places the burden of proving relevant preliminary facts on the proponent of the evidence—in this case the government. *U.S. v. Vinson,* 606 F.2d 149 (1979); *U.S. v. Enright,* 579 F.2d 980 (1978). In *U.S. v. Burger,* 739 F.2d 805 (2nd Cir.1984), a case squarely on point, the Second Circuit vacated the defendant's conviction and remanded for reversal because the government failed to carry its burden of proving the voluntariness of a confession. The District Court had mistakenly placed the burden on the defendant.

■ In an effort to provide a *post hoc* rationale for the admission of Farmer's statement, the government noted at oral argument that there was no probable cause to arrest Short on September 24 when she was interviewed by Farmer. The action of the CID in picking Short up for questioning and the presence of CID agents during the Farmer interview suggests, however, that the authorities had a strong interest in how Mrs. Short would respond to Farmer's questions. Additionally, their presence supports her claim of a subjective belief that she was not free to leave, and suggests that she had, in fact, become the focus of their investigation into sexual abuse. This state of mind was reinforced by the fact that she had only been in the

U.S. for about 3 months, could not drive, and had no friends and no one to turn to. (Tr. 142–47) In *North Carolina v. Butler,* 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979), the Supreme Court noted that a waiver of constitutional rights must be determined by "the particular facts and circumstances surrounding that case, *including the background, experience, and conduct of the accused."* (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); emphasis supplied.) Under the circumstances of this case, it is reasonable to believe that Mrs. Short was "confused and scared," as she testified, and that she felt she "had" to go with the agents and had no choice but to talk to Farmer. Under these circumstances, the government has failed to carry its burden under *Miranda.*

Short next claims that failure to give *Miranda* warnings during the Farmer interview so "tainted" her September 25 confession that it, too, should have been excluded. On this issue as well the government has failed to carry its burden.

The Supreme Court recently had occasion to consider the effect of an earlier, improper confession on a subsequent, *Miranda*-warned confession. In *Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), police officers who came to arrest Elstad asked him a series of questions without giving him the requisite *Miranda* warnings. He stated that he "was there" when asked if he was involved in a burglary. He subsequently received *Miranda* warnings and made a written confession.

The Court agreed that the first statement was properly suppressed. However, it reversed the Oregon Supreme Court, which had determined that the written confession should also be suppressed because the oral statement let the cat "sufficiently out of the bag to assert a coercive impact" [5] during the second interrogation.

The Court rejected the notion that the second confession was coerced by the first and noted that "the admissibility of any

5. *State v. Elstad,* 658 P.2d 552, 555 (1983).

subsequent statement should turn ... solely on whether it is *knowingly and voluntarily* made." (Emphasis added.) 105 S.Ct. at 1293–94. The standard of waiver that the Supreme Court refers to here appears to be the requirement that any Fifth Amendment waiver be made in a "knowing and intelligent" manner. *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023.

■ Here, Short was arrested and reinterviewed on September 25, the morning after the first statement, this time with *Miranda* warnings. In light of *Elstad,* there is no presumption, other than the traditional burden of proof, for or against the "knowing and intelligent" nature of the second statement. In *Elstad* the Court directs us to avoid "establishing a rigid rule," and to "examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements." 105 S.Ct. at 1298. It was impossible under the circumstances for the District Court to make a proper determination about the effect of the first statement on the second because the government had incorrectly advised the court that the first statement satisfied *Miranda* requirements and the court otherwise assumed that the defendant had the burden of showing the inadmissibility of both statements. There is a serious question whether Short's second confession was knowing and intelligent. Short's English was broken and her understanding of English deficient.[6] She apparently had no knowledge of the American criminal justice system.

■ She was arrested by some of the same agents who had told her to come for an "interview" with Farmer, and she was separated from her children and subjected to an interrogation in English, even though one of the agents spoke some German.

Farmer testified that she thought Short was "ignorant," "a victim" herself, and evidenced "judgment limitations." (Tr. at 81–83) Additionally, Farmer testified that, at the interview, she wondered whether Short "recognized that she was implicating herself." (Tr. 83)

The government agents concede that Short's English was so poor that they took special precautions in explaining the *Miranda* warnings to her. In fact, that is the basic argument used to support their characterization of the confession as a voluntary one. This position is undermined, however, by the Magistrate's view that Short would not be able to understand the proceedings against her without *translation into German.* We have only the agents' opinion that Short understood what was happening. The language of the written statement is obviously not Short's.[7] It is, at best, the agents' interpretation of her halting English. These circumstances raise a substantial doubt about the second confession and indicate Short may have confessed because she felt she had no other choice.

On the basis of the record before us, it is clear that the government has failed to meet its burden of proof under Rule 104, *Elstad, Miranda,* and *Lego, supra,* with respect to both confessions. Therefore, we cannot permit the conviction, which is based on this evidence, to stand. Should the government decide to retry Mrs. Short, this decision does not preclude it from demonstrating that the confessions are admissible at the retrial on the basis of facts not presently before us.

The judgment of conviction is therefore vacated and the case remanded for further proceedings consistent with this opinion.

---

6. In *U.S. v. Heredia-Fernandez,* 756 F.2d 1412, 1415 (9th Cir.1985), the Ninth Circuit noted that: [o]ne precondition for a voluntary custodial confession is a voluntary waiver of *Miranda* rights, and language difficulties may impair the ability of a person in custody to waive these rights in a free and aware manner. [citations omitted]

7. For example, the confession contains the term "fellatio." Short testified at trial that she is unfamiliar with this word. (Tr. 128) After reviewing Short's testimony, we simply cannot believe that Short would have knowingly used such language.

WELLFORD, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority's ruling that the statements of Diana Dres were admissible. I must respectfully dissent, however, concerning the majority's determination that Short's two inculpatory statements are inadmissible. For the reasons that follow, I would remand to the district court to determine: (1) whether Short's September 24 statement was "in custody" for purposes of *Miranda* and therefore inadmissible since she was not given *Miranda* warnings; and (2) whether her September 25 confession was voluntary and admissible in light of *Oregon v. Elstad,* —— U.S. ——, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

### 1. *The September 24 statement*

I would remand to the district court to determine whether Short made her September 24 statement "in custody." Short only had a right to *Miranda* warnings if she made her statement in a custodial environment under the case law. *See California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The district court did not have

an opportunity to address this important issue because of misrepresentations or misunderstandings by both parties concerning whether Short had received *Miranda* warnings prior to her September 24 statement.

The trial court was unaware of the content or circumstances of the September 24 statement. I see no reason to require the government to retry defendant instead of requiring the lower court to address the issue on remand. In light of the confusion caused by both parties on this issue, it seems unfair and inefficient to dismiss the case on the ground the government failed to carry its burden.

### 2. *The September 25 statement*

At the pretrial suppression hearing, it. was clear that the court considered only the defendant's September 25 oral statement.[1] The agents testified at the suppression hearing that while defendant could not read or write well in English, she could understand and speak in English without apparent difficulty. One agent, Corbin, who understood German, testified that *Miranda* warnings were given and carefully explained, and that there was "no problem in our communication" in English.[2] The

---

1. Defendant made this statement in response to the agents' questions following her early morning arrest. At the time she was travelling by automobile to a preliminary appearance before the magistrate in Louisville, Kentucky. Subsequently, the defendant's oral statement was reduced to writing. At the preliminary appearance, defendant stated that she did not fully understand the charges and the proceedings. Counsel was immediately appointed for her and there was a German interpreter provided at the bail hearing.

2. I do not agree with the majority's conclusion that Short's understanding of English was insufficient for her to make a knowing and voluntary confession. First, the trial judge found that "[t]here's no question in my mind that this lady has a fundamental grasp of the English language." We should not disturb this finding unless it is clearly erroneous. Second, the majority's suggestion that the magistrate determined that defendant would not understand the proceedings without a German translation is misleading. My review of the record suggests the magistrate merely granted the request of defendant's attorney for assistance in that regard. The magistrate had ordered counsel appointed

for Short because she was indigent. After Short stated she did not fully understand the charges and proceedings, the magistrate ordered consultations between Short and her appointed counsel before the court would conduct any further proceedings. Subsequently her appointed counsel requested a German translator. I see nothing in the record to indicate the magistrate made a finding regarding defendant's ability to communicate in English. Third, I do not think the agents conceded Short's English "was so poor that they took special precautions in explaining the *Miranda* warnings to her" as the majority states. The agents believed Short could understand and speak English, although her reading and writing skills in English were deficient. It is hardly surprising the agents took special precautions to explain *Miranda* to a non-citizen who speaks English as a second language. But this circumstance does not suggest to me that the agents doubted Short could understand English sufficiently to give a voluntary confession. Finally, I do not share the majority's view that the presence of the word "fellatio" in Short's confession, as reduced to writing, suggests she did not make her statement knowingly. The record reveals the reason she used

agents conceded that they did not attempt to have Mrs. Short execute a standard written *Miranda* waiver form. After the submission of testimony and the court's ruling, the government apparently rendered an order overruling the suppression motion, and the following colloquy occurred between the court and counsel:

MS. HASENOUR [defendant's counsel]: Your Honor, I have one other point. The order which was tendered concerned two statements, and the United States has only put on evidence of one, has only shown, carried the burden on one. I think there was—

BY THE COURT: (Interrupting) Well, actually, the United States didn't have the burden to start with,—

MR. WESTBERRY [government's counsel]: (Interrupting) I was going to say—

BY THE COURT: (Continuing)—but Mr. Westberry, in a burst of generosity, assumed it. I know nothing about the second statement. Apparently, Mr. Robinson is not here.

MR. WESTBERRY: I don't believe there is a second statement as to Stephanie Short, Your Honor. That may be when the husband gave another statement to the CID agents.

MS. HASENOUR: Is it the United States' position that the only confession statement that was made is the one made on October 23rd in the car?[3]

MR. WESTBERRY: I don't want to misstate anything. May I have just one second to ask my agent here to make sure that's right?

(Colloquy)

BY THE COURT: Yes, sir.

MR. WESTBERRY: (Conferring off the record at counsel table) Your Honor the CID agents had some initial contact with her. I don't believe a statement was taken. The United States is not intending to rely on anything that was said to Mrs. Short by the CID agents. We stand on the one statement that we took here today. I believe there was some very brief initial contact there early in the investigation.

BY THE COURT: Does that solve your problem?

MS. HASENOUR: Yes, it does, Your Honor.

BY THE COURT: All right. Then the motion to suppress will be denied.

The court, in overruling the motion to suppress, which was concerned only with the September 25 statement, had stated:

The Court's heard the evidence and is convinced that the United States, assuming the burden that it did not have, has established by a preponderance of the evidence that the defendant understood her Miranda rights as read to her, or given to her, by the agents. There's no question in my mind that this lady has a fundamental grasp of the English language which precludes a finding that she did not understand what she was doing when she made the statements. So the motion to suppress will be denied.

The court, then, ruled specifically that defendant understood the *Miranda* rights given to her and that she understood what she was doing in making the alleged September 25 confession. Defendant now appeals from that ruling.

I am not satisfied that the trial court had an adequate or fair opportunity to rule upon the admissibility of either of the statements made by the defendant. The record reveals counsel misconstrued or misunderstood important factors affecting the admission of the part of the Farmer testimony that concerned defendant's September 24 statement. Moreover, I believe the trial court should have the opportunity to review the admissibility of the defendant's September 25 statement in light of *Elstad.* The trial court had the benefit of seeing

---

this term was that she was having difficulty explaining the act the word defines. The agents explained its meaning to Short, and subsequently she used the word as shorthand. Whether this explanation is accurate is a fact question subject to clearly erroneous review.

**3.** The reference to October 23rd is in error.

and hearing first hand the witnesses who have knowledge of the circumstances of these statements. It had the opportunity to hear and observe Short's ability to understand and express herself in English. The court should take into account that defendant was apparently *not* given any *Miranda* warnings prior to September 25th. Indeed, the government took the position at oral argument this warrant was not necessary because there was no probable cause to implicate Short unitl after her responses to Mrs. Farmer's inquiries. We have no basis of knowing whether the district court considered whether Short's alleged statements on September 24th took place in a custodial setting, whether the statements were voluntary, whether Short felt any reasonable apprehension about not responding to all questions, and whether she appreciated and comprehended what was then taking place. The district court should be given the opportunity to make a reasoned disposition of these important suppression issues unhampered by the misconceptions referred to previously.

Accordingly I would REMAND for further proceedings.