940 F.2d 663
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Shaouie ALAOUIE, Defendant-Appellant.
 No. 90-1970.
 United States Court of Appeals, Sixth Circuit.
 Aug. 1, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Shaouie Alaouie appeals his convictions for conspiracy to possess with intent to distribute heroin, and distribution of heroin. For the following reasons, we affirm Alaouie's convictions.
 
 I.
 
 2
 Defendant-appellant Shaouie Alaouie ("defendant" or "Alaouie") is a citizen of Lebanon residing in the United States. Alaouie's command of the English language is questionable and an issue in this case.
 
 
 3
 As part of an investigation, the Drug Enforcement Agency (DEA) arranged for an undercover buy of 600 grams of heroin from Alaouie's acquaintance, Riad Bazzi, for $96,000. Unbeknownst to Alaouie, his friend, Riad Bazzi, had previously served as an informant for the DEA, but was now, himself, the subject of a DEA investigation. (Bazzi was not aware that he was currently dealing with government agents). Bazzi asked the defendant to act as middleman between Bazzi and the heroin supplier, Fyed Shadeed, because Bazzi and Shadeed did not like one another. Alaouie agreed to act as middleman.
 
 
 4
 On March 15, 1989, Bazzi and an undercover DEA agent met at a parking lot in Detroit, Michigan, to consummate the heroin sale. Bazzi was immediately arrested and 300 grams of heroin were confiscated. During an interview following his arrest, Bazzi told DEA agents that he had received the heroin from Alaouie. Bazzi agreed to call the defendant to tell him that a problem had developed with the deal. During the tape recorded telephone conversation between Bazzi and the defendant, Alaouie advised Bazzi that "the man won't give us the rest" of the "stuff" without full payment on the first delivery. Appellee's Brief at 3.
 
 
 5
 On January 29, 1990, Alaouie was arrested at his residence. After being read his Miranda rights, Alaouie acknowledged that he fully understood his rights. While in transit to the DEA offices, Alaouie admitted that he had supplied Bazzi with the heroin that he had received from Shadeed. After arriving at the Detroit DEA offices, the arresting agents asked the defendant if he remembered being read his Miranda rights--Alaouie acknowledged that he remembered. The Miranda rights were not read to Alaouie again. Alaouie thereafter made a tape-recorded statement admitting his role as middleman in the March 15 heroin transaction.[1]
 
 
 6
 On January 25, 1990, a federal grand jury returned a two-count indictment charging Alaouie with: (I) conspiracy to "knowingly or intentionally distribute and to knowingly and intentionally possess with intent to distribute 100 or more grams of heroin" (in violation of 21 U.S.C. Secs. 841(a)(1) and 846); and (II) "knowingly or intentionally distribut[ing] approximately 300 grams of heroin" (in violation of 21 U.S.C. Sec. 841(a)(1)). Alaouie's motion to suppress his tape-recorded statement made on the day of his arrest was denied. The case proceeded to trial on June 1, 1990. Despite Alaouie's objections, the judge refused to charge the jury with the requested defense of entrapment. See Joint Appendix at 101. Alaouie was subsequently convicted on both counts of the indictment and, on August 30, 1990, was sentenced to 97 months imprisonment. Alaouie thereafter filed a timely notice of appeal on September 6, 1990.
 
 II.
 A.
 
 7
 An entrapment defense has two elements: (1) government inducement of the crime; and, (2) defendant's lack of predisposition to engage in the criminal conduct. Mathews v. United States, 485 U.S. 58, 62-63 (1988). Though an entrapment defense instruction should be given whenever there is sufficient evidence from which a jury could find entrapment, id. at 62, the question may be taken from the jury if the facts pertaining to the entrapment issue are not disputed. United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir.1984). Failure to give a requested instruction is reversible "only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantially impairs the defendant's defense." United States v. Sassak, 881 F.2d 276, 279 (6th Cir.1989).
 
 
 8
 We must first determine whether Bazzi may be considered a government agent because a defendant is not entitled to an entrapment instruction when the criminal suggestion was made by a private citizen not cooperating with the government. United States v. Brandon, 633 F.2d 773, 778 n. 5 (9th Cir.1980). Any person acting upon the instructions or directions of a law enforcement officer of the United States may, however, be considered an agent of the government. United States v. Thompson, 366 F.2d 167, 176 (6th Cir.), cert. denied, 385 U.S. 973 (1966).
 
 
 9
 The facts in Brandon are quite similar to the facts presented in the instant action. Brandon supplied Bracelin with cocaine. After being arrested by government agent Yarbrough, Bracelin identified Brandon as his cocaine supplier and agreed to participate in three tape-recorded conversations with Brandon. Brandon was subsequently arrested. The Ninth Circuit Court of Appeals held that the trial judge had correctly refused to submit the entrapment defense to the jury:
 
 
 10
 It is not disputed that Bracelin had no knowledge that Yarbrough was a government agent before the arrest. As a private citizen, not cooperating with the government, Bracelin's approach to Brandon before March 2 was not government solicitation or inducement.
 
 
 11
 United States v. Brandon, 633 F.2d at 778 n. 5.
 
 
 12
 Alaouie claims that the following undisputed facts raise a jury question regarding whether Bazzi was acting as a government agent: (1) Bazzi had worked as an informer for the DEA on two prior occasions; and, (2) when asked twice at trial whether he was working for the government when he first approached Alaouie, Bazzi unequivocally said "No" only once. See Appellant's Brief at 5-6. Any argument that Bazzi may have been working as a government agent is belied, however, by the fact that Bazzi was arrested, prosecuted and convicted for his part in the crime. Furthermore, Bazzi himself stated that he was unaware that he was dealing with the DEA. Because Bazzi was not acting as a government agent when he initially approached Alaouie prior to the March 15 heroin transaction, the defendant's contention that he deserved an entrapment defense jury instruction must fail.
 
 
 13
 Assuming, arguendo, that the defendant had produced evidence that Bazzi was working as a government agent when he first approached Alaouie prior to the March 15 heroin transaction, Alaouie must still demonstrate lack of predisposition and improper inducement.
 
 
 14
 Because entrapment requires that government agents go beyond merely providing the opportunity to commit an offense, see United States v. McLernon, 746 F.2d at 1109 ("Where a person is ready and willing to break the law, the mere fact that government agents provide what appears to be a favorable opportunity, or participate, themselves, in the offense itself, is not entrapment."), a defendant must present evidence to show that he had no previous intent to commit the crime, but was induced or persuaded by agents of the government. See generally United States v. Thompson, 366 F.2d at 174-75.
 
 
 15
 In United States v. Smith, the Ninth Circuit Court of Appeals listed several guidelines for determining whether defendants were predisposed to commit crimes:
 
 
 16
 (1) The character or reputation of the defendant, including any prior criminal record;
 
 
 17
 (2) Whether the government initially made the suggestion of criminal activity;
 
 
 18
 (3) Whether the defendant engaged in the criminal activity for profit;
 
 
 19
 (4) Whether the defendant evidenced reluctance to commit the offense that was overcome by repeated government inducement or persuasion; and,
 
 
 20
 (5) the nature of the inducement or persuasion supplied by the government.
 
 
 21
 802 F.2d 1119, 1124-25 (9th Cir.1986).
 
 
 22
 Alaouie offers the following facts to evidence his lack of predisposition to commit the crime: he was never involved in any previous criminal prosecution; Bazzi was the initiator of the alleged conspiracy; and, Alaouie was not to profit from the transaction. See Appellant's Brief at 7. Though this evidence may raise a question of predisposition, Alaouie offered no evidence to indicate that he was unduly influenced to commit the crime. In fact, Alaouie testified that Bazzi did not pressure him:
 
 
 23
 [Alaouie]: He [Bazzi] came, him and wife, to my house.
 
 
 24
 [Prosecutor]: Okay, were they there a short period of time?
 
 
 25
 [Alaouie]: Yes, they drink coffee and they leave.
 
 
 26
 [Prosecutor]: Okay. He didn't pull a gun on you?
 
 
 27
 [Alaouie]: Pardon me.
 
 
 28
 [Prosecutor]: He didn't threaten you?
 
 
 29
 [Alaouie]: No.
 
 
 30
 [Prosecutor]: He didn't get down on his hands and knees and beg you?
 
 
 31
 [Alaouie]: No.
 
 
 32
 [Prosecutor]: He just casually asked you if you could help him get in contact with Fyed to buy some heroin. Is that right?
 
 
 33
 [Alaouie]: Yes.
 
 
 34
 Joint Appendix at 62-63.
 
 
 35
 Because no reasonable juror could have found entrapment, we reject Alaouie's first assignment of error.
 
 B.
 
 36
 Cognizant that a waiver of rights must be made voluntarily, knowingly and intelligently, Miranda v. Arizona, 384 U.S. 436 (1966), we must consider the totality of the circumstances to determine whether Alaouie waived his rights. See United States v. Murphy, 763 F.2d 202 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986). The prosecution must prove waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).
 
 
 37
 Alaouie argues that, due to his difficulty with English, he should have received a second reading of his Miranda rights before being interrogated at the DEA offices. See Appellant's Brief at 8. A second reading is generally not necessary, however, if a defendant understood his rights the first time that they were read, and waived them voluntarily, knowingly and intelligently. See Ballard v. Johnson, 821 F.2d 568, 571-72 (11th Cir.1987) (Miranda rights did not need to be repeated when they were read earlier that same day, the suspect acknowledged that he had been advised of his rights, and the only break in questioning was to transport the suspect to the sheriff's office). We must therefore determine whether Alaouie understood his Miranda rights the first time that they were read to him, and ascertain whether he made a valid waiver of those rights in light of Alaouie's limited command of the English language.
 
 
 38
 A language barrier is a factor to consider when determining the validity of a waiver. See United States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir.) ("One precondition for a voluntary custodial confession is a voluntary waiver of Miranda rights, and language difficulties may impair the ability of a person in custody to waive these rights in a free and aware manner."), cert. denied, 474 U.S. 836 (1985). The determination is not difficult when the suspect is advised of his rights in a language that he understands. See United States v. Boon San Chong, 829 F.2d 1572, 1574 (11th Cir.1987) ("Chong was advised of his rights in both his native language and English and claimed to understand those rights. His election to answer questions shortly after reading the Chinese Advice of Rights form indicates that he was knowingly waiving his rights despite the language problems."). See also Perri v. Director, Dep't of Corrections, 817 F.2d 448, 452-53 (7th Cir.) (where defendant was given his rights in Italian and stated in English that he understood those rights, waiver was knowing and intelligent), cert. denied, 484 U.S. 843 (1987); United States v. Gonzales, 749 F.2d 1329, 1336 (9th Cir.1984) (even when suspect spoke poor English and police officer spoke poor Spanish, a written Spanish form sufficed).
 
 
 39
 A more difficult problem arises when the Miranda rights are read in English only. In United States v. Bernard S., 795 F.2d 749 (9th Cir.1986), the defendant was a juvenile whose native language was Apache. The defendant neither read nor wrote English--in fact, the defendant's English fluency was so poor that he needed the assistance of an interpreter during trial. The Ninth Circuit Court of Appeals nevertheless determined that the defendant had made a valid waiver of his rights, placing special emphasis on the fact that after the officer explained each of his rights to him in English, the defendant responded that he understood his rights. Id. at 752.
 
 
 40
 In United States v. Short, 790 F.2d 464 (6th Cir.1986), this court determined that the defendant had not knowingly and voluntarily waived her rights. The defendant's native language was German; her English usage was "broken" and her understanding of English "deficient." Moreover, the defendant had no knowledge of the American criminal justice system and required the assistance of an interpreter during trial. Because this court found that the language of the written statement was obviously not the defendant's, and was, at best, the agent's interpretation of the defendant's halting English, we found that a valid waiver had not been made. Id. at 469.
 
 
 41
 In the instant action, Alaouie was read his Miranda rights in English. The arresting officer testified that he took special care to thoroughly explain Alaouie's rights to him. When asked if he understood his rights, Alaouie replied, in English, that he did. Moreover, Alaouie did not require the assistance of an interpreter at trial--Alaouie gave all of his statements and testimony in English. Because Alaouie understood and validly waived his rights, a second reading of the Miranda rights was not necessary.
 
 
 42
 Alaouie also contends that his confession was involuntary because it was obtained through coercion. See Appellant's Brief at 9-10. Alluding to whether he said "I don't want to say anything to you" or "I don't want to tell you anything but the truth," Alaouie claims that, in light of his difficulty with English, the district court erred by allowing "the officers to speculate to what the defendant had said [because it] gives [the government] too much control in the interrogation process." Appellant's Brief at 10. Alaouie's assertions do not establish coercion, however--the appellate record does not indicate any wrongful governmental conduct. Moreover, the district court judge confirmed the officers' interpretation of Alaouie's statement.
 
 
 43
 Because Alaouie made a voluntary, knowing and intelligent waiver of his rights, we reject Alaouie's second assignment of error.
 
 III.
 
 44
 For the aforementioned reasons, we AFFIRM the district court's determinations.
 
 
 
 [1]
 Although there was controversy regarding a statement that Alaouie made at the beginning of the tape (Alaouie contends that he said, "I don't want to say anything to you"), the trial judge ruled, following an evidentiary hearing, that Alaouie said, "I don't want to tell you anything but the truth."