UNITED STATES of America, Plaintiff-Appellee,

v.

Evelio MARTINEZ, Defendant-Appellant.

No. 76–3584.

United States Court of Appeals, Ninth Circuit.

Oct. 10, 1978.

Rehearing and Rehearing En Banc Denied Jan. 3, 1979.

---

Susan Guberman (argued), of Cohen & Guberman, Marina del Ray, Cal., for defendant-appellant.

Dennis Schloss, Atty. (argued), of Dept. of Justice, Los Angeles, Cal., for plaintiff-appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and C. WILLIAM KRAFT, Jr., District Judge.*

JAMES M. CARTER, Circuit Judge:

This is an appeal from a conviction in the Central District of California for participating in gambling activities in violation of 18 U.S.C. § 1955. Appellant argues that evidence obtained pursuant to a wiretap should have been excluded from consideration in the bench trial because the affidavit in support of the application for the wiretaps was insufficient. He also argues that affidavits in support of an application for a search warrant to be executed at his residence did not show probable cause to justify issuing the warrant. Finally, he contends that a language barrier between him and the F.B.I. agent who questioned him tainted his consent to questioning and thus violated his *Miranda* rights. For this reason, he contends, statements he made during questioning should also have been excluded.

The facts show that in January, 1975, the F.B.I. began investigating a large-scale numbers wagering operation in Los Angeles County. Two agents infiltrated the ring, became close associates of certain key figures, and gathered a great deal of information on the identity of many participants and the nature of the operation. Other agents obtained further information by observing a bar which served as the apparent headquarters of the operation, by searching trash receptacles, by logging phone calls made, and the like.

In July, 1975, the investigators requested, and received, permission from assistant Attorney General Scott Crampton[1] to apply for a 20–day wiretap warrant on certain telephones. The application, accompanied by a 38–page affidavit and a detailed history of the investigation to that point, was approved, a warrant was issued, and wiretaps were made on the phones for 15 of the 20 days for which approval was given. The stated purpose of the wiretaps was to gather information on the nature of the gambling activities in other areas, the full scope of the operation within the Los Angeles area, and the identity of other persons involved.

The telephone belonging to appellant was not tapped, but information collected in the taps on other phones incriminated him and was also used to obtain a warrant for the search of his residence. He was present at the time the search warrant was executed, signed a consent form, and was questioned as to his involvement in the gambling operation. The evidence collected during the

---

* Honorable C. William Kraft, Jr., Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. 18 U.S.C. § 2516 requires that all applications for wiretap warrants must be authorized by the United States Attorney General or an Assistant Attorney General specially designated for that purpose. Attorney General Edward Levy had designated Mr. Crampton as the authorizing official on February 12, 1975.

15–day wiretaps, in the course of the F.B.I. search of his residence, and during the custodial interrogation at the time of the search was introduced at appellant's trial and he was convicted. We affirm that conviction.

## I. ISSUES

A. The wiretap evidence:

1. Was the affidavit in support of the application for the wiretaps sufficient to establish the necessity of the wiretaps as required by 18 U.S.C. § 2518?

2. Must either the official who authorizes the wiretap application or the judge who approves the application and issues the warrant make specific findings of fact to support their determination that a wiretap is necessary?

B. Was there probable cause to warrant a search of appellant's residence?

C. Were appellant's inculpatory statements, made at the time the search warrant was executed, excludable because of inadequate *Miranda* warnings?

## II. DISCUSSION

A. *The Wiretap Evidence*

1. *Necessity*

Appellant's major contention is that evidence obtained as a result of the wiretap should have been suppressed because the necessity requirement of 18 U.S.C. § 2518(1)(c) was not met. His argument rests on two factual propositions which, for the purposes of this appeal, may be considered to be undisputed. First, the normal investigative techniques employed by the F.B.I. in its investigation of the gambling operations were highly successful. Second, the wiretaps did not produce the information which the affidavits in support of the wiretap application indicated would result.[2] Thus, he argues, the wiretaps were unnecessary and the evidence that came from them should have been suppressed.

18 U.S.C. § 2518(1)(c) requires that each application for wire interception include:

"a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]"

This "necessity" requirement exists to limit the use of wiretaps because of their highly intrusive nature and to "assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153, n.12, 94 S.Ct. 977, 983, n.12, 39 L.Ed.2d 225 (1974). They are not to be used routinely as the first step in criminal investigations. *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *United States v. Kahn, supra; United States v. Abascal*, 564 F.2d 821 (9th Cir. 1977), *cert. denied sub. nom. Frakes v. United States*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). However, this necessity requirement is also to be interpreted "in a practical and commonsense fashion." S.Rep. No. 1097, 90th Cong., 2d Sess. 1968, U.S.Code Cong. & Admin.News, 2112, 2190. Wiretaps need not therefore be used only as a last resort. *United States v. Abascal, supra; United States v. Smith*, 519 F.2d 516 (9th Cir. 1975); *United States v. Kerrigan*, 514 F.2d 35 (9th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975). *See United States v. Vento*, 533 F.2d 838 (3d Cir. 1976).

The necessity must be readily apparent from the affidavit. Bald conclusory statements without factual support are not enough. Likewise, simple allegations that the crime being investigated is inherently difficult to solve will not, by themselves, suffice. *United States v. Abascal, supra; United States v. Kalustian*, 529 F.2d 585 (9th Cir. 1975); *United States v. Kerrigan, supra*. Rather, the affidavit, when read in its entirety, must show either that:

---

**2.** At oral argument, counsel for the Appellant placed particular emphasis on the fact that the wiretaps were terminated five days early and that the periodic reports which the investiga-

tors were required to make to the judge who had issued the wiretap warrant showed no new information on the scope of the gambling operation or on other participants.

"in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time [, or w]here such techniques have not been so employed . . . under the particular circumstances of the case the employment of such techniques 'reasonably appear [sic] unlikely to succeed if tried or to be too dangerous.'"

*United States v. Spagnuolo,* 549 F.2d 705 (9th Cir. 1977). *See United States v. Kim,* 577 F.2d 473 (9th Cir. 1978); *United States v. Feldman,* 535 F.2d 1175 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Kerrigan, supra.*

The affidavit used in this case to support the application for wiretaps is 38 pages long. It describes in some detail the observations of undercover agents over a six-month period. It lists names of persons involved in gambling activities, and dates and locations of those activities. It lists phone numbers used to conduct the gambling business. It is clear from the affidavit that the investigation prior to the application for the wiretaps was highly productive. On the other hand, the affidavit points out the deficiencies of the investigation up to that time. In spite of the infiltration, undercover agents were unable to discover the names of suspected participants outside the Los Angeles area. They were also unaware of the full scope of the gambling operation, even though their investigation up to that time had revealed it extended beyond the Los Angeles area. Outside surveillance had also failed to turn up the desired information. The affidavit points out that numbers operators rarely keep permanent records, and that the leader of this particular ring had instructed his operators not to link the names of participants with the wagering records. It concludes that a normal search warrant would probably be ineffective in gathering further information on the scope of the operation and the identity of other participants. The affidavit also alleges that a grant of immunity to one of the major participants would be undesirable and counterproductive be-cause only the leader, a man named Ortega, knew of the full extent of the operation and in view of the nature of his involvement, it would be improper to give him immunity in exchange for his testimony.

■ Read as a whole, the affidavit is neither superficial nor conclusory. It contains a full and complete statement as to why certain investigative techniques, though successful, had also failed in some respects. It draws on experience in this and other cases to argue that other investigative techniques (i. e., normal search warrants and grants of immunity) would not succeed. It reveals that the investigators did not attempt to employ wiretaps routinely or as the first step in their investigation. Thus the affidavit here complies fully with the plain meaning of 18 U.S.C. § 2518(1)(c) and with *Spagnuolo,* which states the proper interpretation of that provision in this court.

■ Necessity exists if probable cause is established in the affidavit according to the principles discussed above. It must be shown to exist at the time application for the warrant is made, and it is entirely irrelevant that hindsight shows the purposes of the wiretap were not achieved. *See United States v. Harvey,* 540 F.2d 1345 (8th Cir. 1976); *United States v. Rahn,* 511 F.2d 290 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). Appellant's contention that the volume of incriminating evidence gathered in conventional ways, coupled with failure of the wiretaps to produce information on other participants and activities in other areas shows lack of necessity is without merit. The need arose when, after six months of intensive effort and the employment of a variety of investigative techniques, the F.B.I. still was unable to learn of the full extent of the numbers operation. On that basis, the application was made and approved. There is no evidence and no allegation that there was any bad faith involved in the process. If the warrant was properly issued and properly executed, then suppression of evidence actually collected merely because the objec-

tives of the investigators in seeking the warrant were not achieved and other evidence was available would serve no useful purpose.

### 2. Adequacy of authorization and approval

Appellant finds fault with the process by which the application for the wiretap was first authorized by Assistant Attorney General Crampton and then approved by the district court judge. He contends that at both stages, the respective officials should have made specific findings of fact to support their action. In neither case is this necessary.

■■■ Pursuant to 18 U.S.C. § 2516(1), the investigators sought permission to apply for a wiretap warrant from Mr. Crampton. The purpose in requiring that a high official in the Attorney General's office authorize law enforcement officers to make applications for wiretap orders is to "centralize[] in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques." S.Rep. No. 1097, 90th Cong., 2d Sess., 96–97 (1968), U.S.Code Cong. & Admin.News, p. 2112, *quoted in United States v. Giordano*, 416 U.S. 505, 520, 94 S.Ct. 1820, 1829, 40 L.Ed.2d 341, 356 (1974). This procedure is intended to make wiretap standards uniform, to provide for mature judgment by a responsible official, and to fix responsibility for electronic surveillance at a high level. *Id.* There is, however, no requirement in 18 U.S.C. § 2516 or anywhere else that the authorizing official explain the reasons for his action. Furthermore, this court has held that "[o]nce a proper authorizing officer is properly identified, . . . thereby fixing on him the responsibility for a particular authorization, the basis on which, or the method by which, he gave

the authorization is not, in our judgment, subject to review for compliance with § 2516(1). Rather it is to be presumed that the officer has properly exercised the judgment called for by the statute when he affixes his signature to an order authorizing an application."

*United States v. Turner*, 528 F.2d 143 at 151 (9th Cir.), *cert. denied sub nom. Lewis v. United States*, 50 L.Ed.2d 103, 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), *sub nom. Hackett v. United States*, 429 U.S. 837, 97 S.Ct. 105 (1976). No explanation or showing of independent knowledge is necessary.

■■■ Likewise, the contention that the judge who actually issued the warrant should have been required to issue findings of fact to support his order is erroneous. In this case, the order was conclusory, merely repeating the statutory language to the effect that "normal investigative procedures either have been tried without success and reasonably appear unlikely to succeed if continued, or reasonably appear unlikely to succeed if tried." Order, p. 3, ¶ (c). The record reveals, however, that the order was based on full consideration of the information contained in the application, including the affidavit discussed above. The factual grounds upon which the judge issued the order can be inferred from the affidavit, and to require extra findings would not add to our ability to properly review his actions. 18 U.S.C. § 2518(3), which contains the statutory duties of a judge considering an application for a wiretap warrant, contains no requirement that specific findings be made. Absent a statutory requirement, case law creating such a duty,[3] or any logical need for such findings, we see no merit in appellant's argument.

■■■ We hold, therefore, that because the affidavit in support of the application for the wiretap warrant showed that wire-

---

**3.** The following lower court cases stand for the proposition that a judge is not required to justify with full and complete reasons his conclusion that a wiretap is necessary: *United States v. Curreri*, 363 F.Supp. 430 (D.Md.1973); *United States v. Mainello*, 345 F.Supp. 863 (E.D.N.Y.1972); *United States v. Tortorello*, 342 F.Supp. 1029 (S.D.N.Y.1972), *aff'd*, 480 F.2d 764 (2d Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973); *United States v. Escandar*, 319 F.Supp. 295 (S.D.Fla.1970), *remanded sub nom. United States v. Robinson*, 472 F.2d 973 (5th Cir. 1973) (per curiam).

taps were reasonably necessary, and because the procedure followed in obtaining permission to apply for the warrant and in issuing the warrant were proper, the evidence obtained during the execution of the warrant was properly admitted at the trial.

### B. Probable Cause to Search Appellant's Residence

Appellant next contends that evidence seized during a search of his residence should have been suppressed because the affidavits in support of the application for the search warrant did not show probable cause to suspect that gambling evidence would be found there. We do not agree.

In general, the legality of a search warrant will depend upon the sufficiency of what is found within the four corners of the underlying affidavit. *United States v. Damitz,* 495 F.2d 50 (9th Cir. 1974); *United States v. Bolton,* 458 F.2d 377 (9th Cir. 1972). An affidavit is sufficient if it shows probable cause; that is, if the facts alleged therein would allow a person of reasonable caution to believe that the evidence sought will be found in the stated place. *United States v. Kalama,* 549 F.2d 594 (9th Cir. 1976), *cert. denied,* 429 U.S. 1110, 97 S.Ct. 1147, 51 L.Ed.2d 564 (1977). Probable cause is more than a mere suspicion, but less than evidence which would justify conviction. *Brineger v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, *rehearing denied,* 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949). *See United States v. Damitz, supra; Rodgers v. United States,* 267 F.2d 79 (9th Cir. 1959). The affidavit is to be interpreted in a common-sense and realistic fashion; a hypertechnical interpretation is not required. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *United States v. Bowers,* 534 F.2d 186 (9th Cir. 1976), *cert. denied,* 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1977). In borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it.

*United States v. Ventresca, supra; United States v. Kalama, supra; United States v. Mulligan,* 488 F.2d 732 (9th Cir.), *cert. denied,* 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974).

The affidavits submitted in support of the application for the warrant to search Appellant's residence[4] show that appellant was actively involved in the numbers operation. They allege that he accepted betting money from one of the undercover agents, that he transacted gambling business in person and over the phone on behalf of Mr. Ortega, the head of the operation, that he gave out winning numbers to various callers, and that he was present on other occasions when gambling business was transacted. Although most of the activities listed in the affidavits linking appellant to the gambling ring occurred in the bar which served as the apparent headquarters, one of the affidavits shows that appellant took at least two phone calls at his residence and gave the caller information on wagers he had taken in. These two calls, when viewed in the context of appellant's other involvement in the gambling ring, show probable cause to suspect he engaged in some gambling activities in his home and that evidence would probably be found there that would further tie him to the ring. At the very least, the calls permit the inference that appellant kept records at his residence, on the basis of which he was able to report to the caller on the wagers he had accepted. We therefore hold that the warrant to search appellant's residence was properly issued and that the evidence seized during the search was admissible at the trial.

### C. Adequacy of Miranda Warnings

Appellant's final claim of error concerns the fact that at the time the search warrant discussed above was executed, he received *Miranda* warnings prior to being questioned, but they were read to him in Spanish spoken with a Mexican accent, whereas he spoke and understood Spanish with a

---

**4.** The government incorporated its affidavit in support of its application for a wiretap warrant, discussed above, into its application for a warrant to search Appellant's residence. In addition, it submitted a second affidavit which contained information gathered in the wiretaps.

Cuban accent. This, he argues, made the warnings defective and thus his signed waiver of rights should have been declared invalid and his subsequent inculpatory statements made inadmissible.

Before custodial interrogation of the type involved here may be conducted properly, the person being interrogated must knowingly and intelligently waive his right to remain silent. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Cook,* 418 F.2d 321 (9th Cir. 1969); *Craft v. United States,* 403 F.2d 360 (9th Cir. 1968). We assume without so holding that if *Miranda* warnings are given in a language which the person being so instructed does not understand, a waiver of those rights would not be valid. Such is not the case here, however.

There was corroborated testimony given at the suppression hearing to the effect that appellant appeared to understand the *Miranda* warnings as they were read to him. Appellant himself testified at the same hearing that he understood the written Spanish on the signed waiver form, which also included a copy of the warnings that had been read to him. He testified at the hearing that he had not read the form at the time he signed it, but two government witnesses said he did. He also testified that he understood at the time he was questioned that he did not have to sign the waiver. Finally, his contention that he did not understand the dialect in which the warnings were read to him is seriously weakened by the fact that he continued to converse in Spanish with the officer who had read him the warnings, and it was in the course of that conversation that the inculpatory statements were made.

We hold that appellant's *Miranda* warnings were properly given and knowingly and intelligently waived. His inculpatory statements were therefore properly admitted at the trial.

The conviction is affirmed.