**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John DOE (Minor, Phx),
Defendant-Appellant.**

**No. 84-1211.**

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 17, 1985.*

Decided June 27, 1985.

As Corrected April 18, 1986.

---

* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a).

Charles F. Hyder, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Michael V. Black, Asst. Federal Public Defender, Phoenix, Ariz., for defendant-appellant.

Before FLETCHER, BOOCHEVER and NORRIS, Circuit Judges.

**CORRECTED OPINION**

NORRIS, Circuit Judge:

Appellant was convicted of voluntary manslaughter for shooting and killing his father on the front porch of the family residence on the Fort Apache Indian Reservation. Appellant's appeal challenges the district court's determinations that he voluntarily waived his *Miranda* rights and that exigent circumstances existed to allow a warrantless search of his residence. We affirm.

**I.**

On the morning of December 14, 1983, appellant heard his parents fighting on the front porch of the family residence. He grabbed his rifle and ran out to find his father beating his mother. Appellant's sister attempted to grab the rifle or to push it away, but the rifle discharged and hit appellant's father in the back. Appellant's brother-in-law took the rifle from appellant and hid it in the shower in a back room of the house.

In response to a radio dispatch for police and medical assistance, Officer Goode arrived at appellant's residence to find the decedent lying shot on the front porch. He was told by appellant's sister and brother-in-law that appellant had shot his father. Goode entered the house with them and appellant's brother-in-law gave Goode the loaded rifle. Goode took the rifle to the police car and secured it.

Later that morning, appellant was arrested by Lieutenant Grijalva and advised of his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1629–30, 16 L.Ed.2d 694 (1966), and his rights pursuant to the Indian Civil Rights Act, 25 U.S.C. § 1301 et seq. (1982).[1] When appel-

---

1. The *Miranda* rights include, of course, the right to appointed counsel in a criminal action

brought by the United States. The Indian Civil Rights Act, however, does not provide the right

lant indicated that he did not understand his rights, Grijalva ceased questioning him.

That afternoon, FBI Agent Johnson interrogated appellant while he was in custody at the Bureau of Indian Affairs (BIA). Prior to the interrogation, Johnson advised appellant of his *Miranda* rights by using the standard FBI warning and waiver form. Johnson did not advise appellant of his rights under the Indian Civil Rights Act as Lieutenant Grijalva had done that morning. Though appellant appeared to be upset, he said he understood everything he was told and, after Agent Johnson read the FBI form to him, appellant read it back to Johnson. The only difficulty appellant had was with the word "coercion," and Johnson told him how to pronounce it and explained its meaning. Appellant did not ask for an attorney and agreed to speak with Johnson without an attorney present. He also signed the warning and waiver form. Appellant's mother was neither notified of the interrogation nor invited to be present. During the interrogation, appellant stated, among other things, that he had shot his father.

While still in custody at the BIA, appellant was reinterrogated by Johnson on January 3 and 5, 1984. On both occasions, Johnson orally advised appellant of his *Miranda* rights and appellant agreed to be questioned without an attorney and to give a voluntary statement, which he did. In neither instance did Johnson ask appellant to sign a warning and waiver form. Appellant's statements were, like those made on December 14, 1983, incriminating.

On March 8, 1984, an information was filed charging appellant with first-degree murder in violation of 18 U.S.C. §§ 1111, 1153 (1982). Appellant pled not guilty and filed a motion for a voluntariness hearing and a motion to suppress.

On June 20 and 21, 1984, a combined nonjury trial and evidentiary hearing was held. At its conclusion, the district court found that appellant's statements were voluntary and denied his motion to suppress. The district court then found appellant guilty of voluntary manslaughter.

On July 25, 1984, appellant filed a timely notice of appeal. The district court had jurisdiction under 18 U.S.C. § 5032. This court has jurisdiction under 28 U.S.C. § 1291.

### II.

Appellant does not dispute the adequacy of the *Miranda* warnings he received.[2] His sole contention on appeal is that he did not knowingly and voluntarily waive his *Miranda* rights because he simply did not understand the warnings.

In *United States v. Hooton,* 662 F.2d 628 (9th Cir.1981), *cert. denied,* 455 U.S. 1004, 102 S.Ct. 1640, 71 L.Ed.2d 873 (1982), we held that a district court's determination that a suspect knowingly and voluntarily waived his *Miranda* rights is reviewed under the clearly erroneous standard. *Id.* at 631. We now review that holding in light of our recent en banc decision in *United States v. McConney,* 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* — U.S. —, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).[3] In *McConney,* we said that "mixed questions [of law and fact] in which the applicable legal standard provides for a strictly factual test, such as state of mind, and the application of law to fact, consequently, involves an 'essentially factual' inquiry" are reviewed under the clearly erroneous standard. *Id.* at 1203. The question whether a defendant knowingly and voluntarily waived his *Miranda* rights is precisely such a mixed question. It requires a

to appointed counsel in an action brought under tribal law in tribal court. 25 U.S.C. § 1302(6) (1982).

2. That issue, had it been raised, would have been reviewable de novo as a question of law. *United States v. Noti,* 731 F.2d 610, 614 (9th Cir.1984).

3. This panel is free to reexamine an earlier decision of a three-judge panel that may have been undermined by a later en banc decision. *United States v. Howard,* 758 F.2d 1318, 1320 n. 1 (9th Cir.1985) (per curiam) (reexamining the standard of review for probable cause in light of *McConney* ).

court to inquire into the totality of the circumstances and the defendant's state of mind to ascertain whether he in fact knowingly and voluntarily waived his rights. *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979). The inquiry does not require the consideration of abstract legal doctrines, the weighing of underlying policy considerations, or the balancing of competing legal interests. *Cf. McConney,* 728 F.2d at 1205 (The issue of exigent circumstances is reviewed de novo because it requires a court to balance competing legal interests—the safety of law enforcement officers and Fourth Amendment privacy interests.). Rather, the question of the voluntariness of a waiver of *Miranda* rights is an " 'essentially factual' inquiry" which a district court is best suited to make. We thus conclude that our holding in *Hooten* is consistent with *McConney* and reconfirm that the issue of whether a defendant in fact knowingly and voluntarily waived his *Miranda* rights is reviewed under the clearly erroneous standard. *Cf. United States v. Salvador,* 740 F.2d 752, 757 n. 3 (9th Cir.1984) (whether defendant's consent to search was voluntary is reviewed under the clearly erroneous standard), *cert. denied,* —— U.S. ——, 105 S.Ct. 978, 83 L.Ed.2d 980 (1985).

■ The district court found that prior to appellant's first interrogation on the afternoon of December 14, 1983, he knowingly and voluntarily waived his *Miranda* rights with a clear understanding of what he had been advised of. That finding is not clearly erroneous.

At the time appellant was first questioned, he was in the eleventh grade, had a good command of the English language and was able to converse coherently and rationally with FBI Agent Johnson. There is no indication that he was too upset or of insufficient intelligence and maturity to understand the rights he was waiving or the consequences of his waiver. To the contrary, as the district court noted, he was intelligent and aware enough to pick out the word "coercion" and to ask how to pronounce it and what it meant. After Johnson responded to his inquiry, appellant signed the standard FBI warning and waiver form. In short, there is ample evidence in the record to support the district court's finding that appellant knowingly and voluntarily waived his *Miranda* rights before he was interrogated on December 14. There is no record support for appellant's conclusory assertion that he "could only have been confused about his right to 'free counsel' " because earlier that day Lieutenant Grijalva had advised appellant of both his *Miranda* rights and his rights under the Indian Civil Rights Act, which does not provide for free counsel.

■ The district court also found that prior to appellant's subsequent interrogations on January 3 and 4, appellant again voluntarily waived his rights. Appellant offers no support for his contention to the contrary that the statements made on January 3 and 4 should have been suppressed simply because no formal written waivers were signed. On both occasions, appellant was reminded of his rights, stated that he understood those rights and voluntarily offered a statement.

The district court's determinations were not clearly erroneous. The government has sustained its heavy burden of demonstrating that appellant in fact knowingly and voluntarily waived his Fifth and Sixth Amendment rights. *See Fare,* 442 U.S. at 724, 99 S.Ct. at 2571 (citing *Miranda v. Arizona,* 384 U.S. at 475, 86 S.Ct. at 1628).

### III.

Appellant also challenges the warrantless entry into his residence and the district court's denial of his motion to suppress the rifle obtained by Officer Goode while inside the residence.[4] Appellant bases his challenge exclusively on the contention that the

---

**4.** We note initially that an argument could be made that the officer's entry of the house was consensual, and that the weapon was voluntarily given to him, rather than being obtained as the result of a search. For the purpose of our discussion, however, we assume there was a search.

district court erred in finding that exigent circumstances existed at the time Goode entered appellant's home. We review de novo the district court's determination that exigent circumstances existed. *McConney,* 728 F.2d at 1205.

 In response to a radio dispatch, Officer Goode arrived at appellant's residence to find the decedent lying shot on the front porch. He was confronted with a situation in which he reasonably and in good faith concluded that a substantial risk of harm to himself and others existed that justified an immediate search for the weapon prior to the obtaining of a warrant. He immediately sought and obtained the weapon in order to render the premises secure for the family, medical technicians and others. On this record we hold that exigent circumstances existed. *See Salvador,* 740 F.2d at 758 (Exigent circumstances include "those in which a substantial risk of harm to the persons involved ... would arise if the police were to delay a search until a warrant could be obtained." (quoting *United States v. Robertson,* 606 F.2d 853, 859 (9th Cir.1979)).

AFFIRMED.