**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**BERNARD S., Defendant-Appellant.**

**No. 85–1326.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1986.

Decided July 25, 1986.

Rhonda L. Ripp, Virginia A. Mathis, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Javier Chon-Lopez, Tucson, Ariz., for defendant-appellant.

Before PREGERSON, POOLE, and JOHN T. NOONAN, Jr., Circuit Judges.

PREGERSON, Circuit Judge:

Bernard S., a juvenile, appeals from his conviction of assault resulting in serious bodily injury. He asserts that the district court erred in: (1) finding that he waived his *Miranda* rights before making inculpatory statements to an FBI agent; and (2) admitting into evidence medical records in-

dicating the extent of the victim's injuries. We affirm.

## BACKGROUND

On May 3, 1985, an altercation occurred between appellant and Lemuel Goode in a house on the San Carlos Apache Indian Reservation. Goode received head injuries which required hospitalization.

On May 14, 1985, FBI Agent Lynn Bedford questioned appellant at the San Carlos Police Department on the reservation. Appellant's mother and San Carlos Police Lieutenant Stevens, who both spoke Apache, were also present.

Prior to questioning, Agent Bedford advised appellant of his *Miranda* rights by reading from a standard form in English. Bedford then explained each individual right to appellant and his mother. After each right, Bedford asked appellant if he understood his rights, and he stated that he did. Appellant also stated that he was willing to waive his rights and signed a written waiver form. Appellant never indicated that he did not understand his rights. He did ask his mother and Lt. Stevens to explain a few items into Apache, but these translations were made after the *Miranda* rights were read and waived, and did not involve those rights.[1]

Bedford questioned appellant after he had signed the waiver form. He responded to Bedford's questions in English. During the questioning, appellant made inculpatory statements indicating that he had assaulted Lemuel Goode.

Appellant was charged with juvenile delinquency, 18 U.S.C. §§ 5031–5037, for assault resulting in serious bodily injury, 18 U.S.C. §§ 113(f), 1153. A bench trial and a hearing were held on September 13, 1985. Before trial, appellant objected to the government's use of his statements to Agent Bedford on the ground that they were obtained involuntarily and in violation of his *Miranda* rights. Appellant also ob-

jected at trial to the admission of a copy of the victim's medical records as violating the confrontation clause of the sixth amendment. The district court overruled both objections and found the defendant guilty. Appellant was sentenced to the custody of the Attorney General until his 18th birthday.

## DISCUSSION

### A. *Waiver of Miranda Rights*

#### 1. *Standard of Review*

We review the district court's determination that a defendant waived his *Miranda* rights under the clearly erroneous standard. *United States v. Doe*, 787 F.2d 1290, 1293 (9th Cir.1986); *United States v. Binder*, 769 F.2d 595, 598 (9th Cir.1985).

#### 2. *Requirements of a Valid Waiver*

To be valid, a waiver of *Miranda* rights must be voluntarily, knowingly, and intelligently made. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); *Binder*, 769 F.2d at 599. Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant. *North Carolina v. Butler*, 441 U.S. 369, 374–75, 99 S.Ct. 1755, 1757–58, 60 L.Ed.2d 286 (1979); *see Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The age of the defendant is one factor in applying the totality test. *See Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979). Similarly, any language difficulties encountered by the defendant are considered to determine if there has been a valid waiver. *See United States v. Heredia-Fernandez*, 756 F.2d 1412, 1415 (9th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 110, 88 L.Ed.2d 90 (1985); *see also United States v. Gonzales*, 749 F.2d 1329, 1335–36 (9th Cir.1984) (reviewing language difficulties in determin-

---

1. Agent Bedford testified that the translations took place during questioning and did not involve the *Miranda* warnings. Additionally, Bedford testified that any clarification was "just a brief explanation" and that "virtually the entire conversation was done in English, both from my talking and Bernard's."

ing whether waiver was valid); *United States v. Martinez*, 588 F.2d 1227, 1235 (9th Cir.1978) (assuming "without so holding that if *Miranda* warnings are given in a language which the person being so instructed does not understand, a waiver of those rights would not be valid"). There is a presumption against waiver, and the burden of showing a valid waiver is on the prosecutor. *Butler*, 441 U.S. at 373, 99 S.Ct. at 1759; *Binder*, 769 F.2d at 599.

### 3. *Analysis*

Appellant challenges the finding that he validly waived his *Miranda* rights on essentially two grounds. First, he argues that because he has a limited knowledge of English, he could not validly waive his rights because they were not explained to him in Apache. Second, appellant notes that he is only seventeen years old and claims that the district court "failed to scrutinize a confession, by a juvenile, with special care." A review of the record, however, reveals substantial evidence supporting the district court's determination that appellant understood and validly waived his *Miranda* rights.

It is clear from the record that appellant does have some difficulty with English. He testified that he neither reads nor writes English, he occasionally spoke Apache with his mother and Lt. Stevens during the questioning to clarify some items, and he was assisted in his testimony at trial by an interpreter. On the other hand, he admitted that he studied English through the seventh grade and that he answered Agent Bedford's questions in English.

Most importantly, after Bedford explained each of his rights to him in English, appellant stated that he understood his rights. Bedford testified that "I asked him if he understood [his rights], if he understood all of the wording, and he stated that he did. He didn't have any questions. I also made sure that his mother understood what his rights were. And I explained to both of them and asked them if they understood. And they stated that they did." At no time did appellant indicate that he did not understand his rights.

Despite the language difficulties encountered by appellant, the evidence seems to indicate that he understood his rights and voluntarily, knowingly, and intelligently waived them. *See Martinez*, 588 F.2d at 1234–35;[2] *see also Gonzales*, 749 F.2d at 1336 ("The court and jury also heard ample testimony concerning both [the agent's] Spanish ability and [the Spanish-speaking defendant's] English ability, and that evidence would support a determination that the two understood each other.").[3]

Appellant's second contention, that the district court failed to scrutinize the issue of waiver with "special care because of [appellant's] age," is without merit. Although age is a factor in determining whether there has been a valid waiver of *Miranda* rights, the totality of the circumstances test is equally applicable to juveniles and adults. *Fare*, 442 U.S. at 725–27, 99 S.Ct. at 2571–73. The Court in *Fare* noted:

> The totality-of-the-circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved. We discern no persuasive reasons why any

---

**2.** In *Martinez*, the defendant contended, *inter alia*, that the warnings were inadequate because they were read to him in Spanish spoken with a Mexican accent whereas he spoke and understood Spanish with a Cuban accent. 588 F.2d at 1234–35. The court noted "[defendant's] contention that he did not understand the dialect in which the warnings were read to him is seriously weakened by the fact that he continued to converse in Spanish with the officer who had read him the warnings, and it was in the course of that conversation that the inculpatory state-

ments were made." *Id.* at 1235; *see also United States v. Abou-Saada*, 785 F.2d 1, 10 (1st Cir. 1986) (in finding that defendant understood English and understood the *Miranda* warnings, the court noted that the defendant answered the officer's questions in English).

**3.** In *Gonzales*, defendant was given his rights in Spanish and English, and conversed with the agent in both languages. 749 F.2d at 1336.

other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed, it mandates—inquiry into all the circumstances surrounding the interrogation.

*Id.* at 725, 99 S.Ct. at 2572. The record in this case does not indicate that appellant's age negated the district court's finding that he validly waived his *Miranda* rights. *See Fare,* 442 U.S. at 726–27, 99 S.Ct. at 2572 (valid waiver by sixteen year-old juvenile); *Doe,* 787 F.2d at 129 (valid waiver by juvenile); *United States v. Palmer,* 604 F.2d 64, 67 (10th Cir.1979) (valid waiver by seventeen year-old).

■■■ In sum, the evidence tends to indicate that appellant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights. At appellant's request, and in the presence of his mother, Agent Bedford read his rights to him and explained each right to him individually. After he was explained each of his rights, appellant stated that he understood that right. He answered Agent Bedford's questions in English and at no time indicated that he did not understand what was being said to him. Finally, appellant signed a written waiver of his *Miranda* rights.[4] Accordingly, the district court's finding that appellant voluntarily, knowingly, and intelligently waived his *Miranda* rights is not clearly erroneous. *See Doe,* 787 F.2d at 1293 ("At the time appellant[5] was first questioned, he was in the eleventh grade, had a good command of the English language and was able to converse coherently and rationally with [an FBI agent]. There is no indication that he was too upset or of insufficient intelligence and maturity to understand the rights he was waiving or the consequences of his waiver.").

### B. Admission of Medical Records

#### 1. Standard of Review

We review a district court's decision to admit evidence for an abuse of discretion. *See United States v. Ordonez,* 737 F.2d 793, 811 (9th Cir.1984).

#### 2. Hearsay and the Confrontation Clause

■■■ The sixth amendment's confrontation clause provides that "in all criminal prosecutions the accused shall enjoy the right ... to be confronted with the witnesses against them." U.S. Const. amend. VI. The clause indicates a preference for face-to-face confrontation at trial and is primarily intended to secure the right of cross-examination. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). Although based on similar principles, the confrontation clause and the hearsay rule are not coextensive. *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). Thus, admitting a hearsay statement into evidence may still violate the confrontation clause even though the evidence falls within a recognized hearsay exception. *See Dutton,* 400 U.S. at 82, 91 S.Ct. at 216; *California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L.Ed.2d 489 (1970); *United States v. Huber,* 772 F.2d 585, 588 (9th Cir.1985).

Before the Court's recent decision in *United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), evidence admissable under a hearsay exception was also scrutinized under the confrontation clause through a two-prong test elaborated in *Roberts* :

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable.

---

**4.** Although not dispositive, a written waiver of one's *Miranda* rights is "strong" evidence that the waiver is valid. *Butler,* 441 U.S. at 373, 99 S.Ct. at 1757; *United States v. Skinner,* 667 F.2d 1306, 1309 (9th Cir.1982), *cert. denied,* 463 U.S. 1229, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983); *but cf. Binder,* 769 F.2d at 599 ("A signed waiver

form is only one factor to be considered" in determining whether there has been a valid waiver).

**5.** The defendant in *Doe* was also a Native American juvenile living on an Apache Reservation.

Even then, his statement is admissible only if it bears adequate "indicia of reliability."

448 U.S. at 66, 100 S.Ct. at 2539. The "unavailability" prong of *Roberts*, however, is not an absolute requirement. The government need not demonstrate the unavailability of a hearsay declarant when the "utility of trial confrontation [is] remote." *Roberts*, 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7 (citing *Dutton*, 400 U.S. at 87, 91 S.Ct. at 219); *see Huber*, 772 F.2d at 588; *United States v. Perez*, 658 F.2d 654, 661 (9th Cir.1981). In *Dutton*, the court did not require production of a seemingly available witness because the hearsay statement was "of peripheral significance" in light of the plethora of other evidence. *Dutton*, 400 U.S. at 87, 91 S.Ct. at 219; *see Huber*, 772 F.2d at 588. Thus, a showing of unavailablity may be unnecessary where the testimony is "neither 'crucial' to the prosecution nor 'devastating' to the defendant." *Perez*, 658 F.2d at 661 (quoting *Dutton*, 400 U.S. at 87, 91 S.Ct. at 219); *see Huber*, 772 F.2d at 588; *United States v. McClintock*, 748 F.2d 1278, 1292 (9th Cir. 1984), *cert. denied*, — U.S. —, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985).[6]

In *Inadi*, the Court held that the unavailability prong of *Roberts* is inapplicable to hearsay statements of a nontestifying coconspirator admitted under the coconspirator exception of Fed.R.Evid. 801(d)(2)(E). *Inadi*, 106 S.Ct. at 1129. The Court held that unlike the prior testimony evaluated in *Roberts*, which is merely a substitute for in-court testimony, statements made during a conspiracy have an evidentary significance that cannot be replicated by in-court testimony. *Id.* at 1126–27. The Court also noted that if the defendant wishes to cross-examine the declarant, he may subpoena the declarant as a witness. *Id.* at 1127–28.

Some language of the *Inadi* opinion casts doubt on the general application of the *Roberts* unavailability prong to hearsay other than prior testimony. *See Inadi*, 106 S.Ct. at 1125–26.[7] The Court, however, subsequently decided *Lee v. Illinois*, — U.S. —,106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), in which it held that a codefendant's hearsay confession inculpating the defendant was inadmissable under the confrontation clause because it was unreliable. In analyzing the *reliability* of the codefendant's confession, both the majority and the dissent in *Lee* assumed that the unavailability prong of *Roberts* applied to the codefendant's confession. *Id.* 106 S.Ct. at 2061, 2067 n. 2 (Blackmun, J., dissenting).

Thus, it is unclear, in light of *Inadi* and *Lee*, whether the unavailablity prong applies to hearsay statements admitted under the business records exception. We need not decide this issue, however, because we find that the statements were properly admitted in this case even if the unavailablity prong of *Roberts*, vis-a-vis the business

---

**6.** The rule that a showing of unavailability of an out-of-court declarant is not required when the hearsay evidence is insignificant is arguably redundant in light of the harmless error rule. If a hearsay declarant is not produced at trial, a showing that the hearsay evidence was not "crucial" can lead to either a finding that the confrontation clause was not violated or a finding that such a violation was harmless. *See Huber*, 772 F.2d at 588–89 (admission of hearsay evidence was not of peripheral significance and not harmless "[f]or substantially the same reasons"); *McClintock*, 748 F.2d at 1292 (same).

This redundancy can be traced to the somewhat dubious origins of the "peripheral significance" exception to the unavailability requirement. The reasoning of *Dutton*, a plurality opinion, suggests that the "peripheral significance" notion is merely a restatement of the harmless error rule. *See Dutton*, 400 U.S. at 87, 91 S.Ct. at 219. In fact, two of the justices joining the four-member plurality opinion also concurred separately to note that any error was harmless. *See id.* at 91–93, 91 S.Ct. at 220–21 (Blackmun, J., joined by Burger, C.J., concurring).

**7.** The Court stated:

*Roberts* must be read consistently with the question it answered, the authority it cited, and its own facts. All of these indicate that *Roberts* simply reaffirmed a long-standing rule ... that applies unavailability analysis to prior testimony. *Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable.

106 S.Ct. at 1126 (footnote and citations omitted).

records exception, survives *Inadi.* We will thus assume *arguendo,* as did the Court in *Lee,* that the unavailability analysis of *Roberts* applies to this case.

### 3. *Analysis*

■ Appellant contends that the admission of the medical records of Lemuel Goode violated the confrontation clause because the doctor who entered the information on the records did not testify.[8] Although the government produced the custodian of the hospital records at trial to establish a foundation for the admission of the medical records under the business records exception, it failed to produce or demonstrate the unavailability of the doctor. *See Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538. Were the government required to establish in this case that the doctor who prepared the medical records was unavailable, then, the admission of the records would run afoul of the confrontation clause.[9] In this case, however, a showing of unavailablilty was not required because the evidence contained in the records was of peripheral significance.

Appellant claims that the admission of the medical records was crucial in establishing the element of "serious bodily injury."[10] He contends that he was denied the opportunity to challenge the accuracy and reliability of the information contained in the records. The evidence in the medical records, however, corroborated extensive evidence concerning the nature of Goode's injuries. Goode himself testified at length about the nature of his injuries and the extent of his hospitalization.[11] Other witnesses testified that appellant repeatedly hit Goode on the head and body with a large stick. Additionally, several witnesses testified that after the beating, Goode was bleeding from his head and apparently was unconscious.[12] Finally, the government in-

8. Appellant does not appear to challenge the reliability of the records. Such a challenge would in any event probably be unavailing; the Court has expressly noted that business records are among those "certain hearsay exceptions [that] rest upon such solid foundations that admission of virtually any evidence within them comports" with the reliability prong. *See Roberts,* 448 U.S. at 66 and n. 8, 100 S.Ct. at 2539 and n. 8; *see also Dutton,* 400 U.S. at 95–96, 91 S.Ct. at 222–23 (Harlan, J., concurring) (business records should be admissible even without a showing of unavailablity).

9. *See, e.g., McClintock,* 748 F.2d at 1291–92 (reports prepared by gemstone experts were inadmissable because the preparers of the reports did not testify and were not shown to be unavailable); *Stevens v. Bordenkircher,* 746 F.2d 342, 348–49 (6th Cir.1984) (death certificate); *Ordonez,* 737 F.2d at 802 (business ledgers reflecting alleged cocaine transactions); *United States v. Oates,* 560 F.2d 45, 81–84 (2d Cir.1977) (chemist worksheet); *Phillips v. Neil,* 452 F.2d 337, 347–49 (6th Cir.1971) (medical records); *Pickett v. Bowen,* 626 F.Supp. 81, 84–85 (M.D. Ala.1985) (medical records).

10. 18 U.S.C. § 113(f) does not provide a definition of serious bodily injury. At least two courts that have attempted to define this term have held that it means more than slight injury, but there is no requirement that the injury create a substantial likelihood of death. *See United States v. Johnson,* 637 F.2d 1224, 1245–46 (9th Cir.1980) (no requirement of "substantial risk of death"); *United States v. Webster,* 620 F.2d 640,

641–42 (7th Cir.1980) (no requirement of "high probability of death"). In *Johnson,* we noted that "the existence and definition of serious bodily injury in a given case is primarily a jury question dependent upon an evaluation of all circumstances of the injury or injuries." 637 F.2d at 1246. Relevant factors include "whether the victim suffered extreme physical pain, protracted and obvious disfigurement, protracted loss or impairment of the function of a bodily member, organ, or mental faculty, protracted unconsciousness, and significant or substantial internal damage...." *Id.* The court noted that "the presence or absence of any of these factors is not to be determinative." *Id.*

11. Goode testified that: he was unconscious for a time; when he woke up in the hospital he was unable to use the left side of his body or see out of his left eye; he was in the hospital for a month; he had undergone physical therapy while in the hospital and after leaving the hospital; he had a head wound that required stitches; he could walk only with the help of crutches for two weeks; he temporarily lost hearing in his left ear.

12. One witness testified that Goode was having a hard time breathing and was bleeding from the head. Another witness testified that Goode was bleeding and not talking. A police officer for the San Carlos Apache Tribe testified that when he arrived the victim was unconscious and was bleeding around the head; he stated that at the time he "didn't know if he was still

troduced photographs of Goode taken by a police officer. The photographs apparently demonstrated that Goode's injuries were serious.

In sum, the medical records simply corroborated the testimony of several witnesses, and especially the victim, that he suffered severe injuries as a result of the beating. The evidence contained in the medical records was neither crucial to the government nor devastating to the defense; further, any utility in confronting the doctor would have been "remote." Thus the records were admissible without a showing of unavailability. *See Roberts,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7; *Dutton,* 400 U.S. at 87–88, 91 S.Ct. at 219.

██ Moreover, confrontation clause violations are subject to harmless error analysis. *Delaware v. Van Arsdall,* — U.S. ——, 106 S.Ct. 1431, 1437–38, 89 L.Ed.2d 674 (1986); *see Lee,* 106 S.Ct. at 2065–66; *United States v. Mouzin,* 785 F.2d 682, 693 (9th Cir.1986). The admission of the medical records in this case does not require a reversal if the error was harmless beyond a reasonable doubt. *See Van Arsdall,* 106 S.Ct. at 1438. Whether a violation of the confrontation clause is harmless depends on a variety of factors including: (1) the importance of the evidence to the prosecutions's case; (2) whether the evidence was cumulative; (3) the presence of corroborating evidence; (4) the overall strength of the prosecution's case. *Id.*

██ In this case, any error is harmless because, as discussed above, the evidence was of peripheral significance to the case.

## CONCLUSION

The district court properly found that despite defendant's age and minor difficulties with the English language, he understood his *Miranda* rights read to him by Agent Bedford and voluntarily, knowingly, and intelligently waived those rights. The district court did not abuse its discretion by admitting the medical records without the government first showing that the doctor who completed the records was unavailable as a witness; such evidence was of peripheral significance and, in any event, any error was harmless. The judgment against appellant is therefore

AFFIRMED.

---

alive or not." Finally, another police officer with the San Carlos Police Department testified that when he arrived at the house Goode was unconscious, made no verbal response to his questions, was "pretty well beaten on his head," and had "a hole at the back of his head at the time."