976 F.2d 738
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Russell Lee KEITH, Defendant-Appellant.
 No. 91-50539.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 18, 1992.
Decided Sept. 16, 1992.
 
 1
 Before TANG and CYNTHIA HOLCOMB HALL, Circuit Judges, and WALKER*, District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Russell Lee Keith was convicted on one count of conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 846. He was sentenced to a period of 262 months imprisonment, pursuant to the Federal Sentencing Guidelines. Keith appeals his conviction on several grounds. The district court had jurisdiction under 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 
 4
 * Keith first argues that the admission of the hearsay evidence of Biddle's conversation with Davidson violated Keith's Sixth Amendment right to confront the witnesses against him. The government does not dispute that Davidson's testimony regarding what Biddle told Davidson about Keith was hearsay. But it argues that it was proper for the government to elicit this hearsay in order to correct the "false impression," created during Sherman's cross examination of Davidson, that Biddle and Davidson had discussed Williams and Robbins, rather than Keith and Robbins. It argues that Keith opened the door to the hearsay portions of the testimony by withdrawing his objection to Davidson's testimony on cross-examination, and thereby permitting the creation of the false impression.
 
 
 5
 The circumstances under which the alleged Confrontation Clause violation arose are somewhat unusual. But Keith's claim need not detain us long. For even if we assume that admission of this hearsay violated Keith's rights under the Confrontation Clause, we nevertheless conclude the violation was harmless beyond a reasonable doubt. In assessing whether a violation of the Confrontation Clause was harmless, we consider: "(1) the importance of the evidence to the prosecution's [sic] case; (2) whether the evidence was cumulative; (3) the presence of corroborating evidence; (4) the overall strength of the prosecution's case." United States v. Bernard S., 795 F.2d 749, 756 (9th Cir.1986) (citing Delaware v. Van Arsdall, 475 U.S. 673 (1986)).
 
 
 6
 Though Davidson's testimony was damaging, by no stretch of the imagination could it be called important to the government's case. It was never part of the government's case-in-chief; it was never mentioned in either opening or closing argument; nor was it raised in the government's direct examination of Davidson. ASUSA Bennett asked three questions regarding the conversation, which were limited to correcting the false impression created by Davidson's testimony on cross-examination. Once he had accomplished that task, Bennett dropped the subject.
 
 
 7
 Furthermore, the evidence was not, as Keith suggests, "thin," but rather more than ample to support his conviction. On January 18 Keith, who was unemployed, rented a car with a cellular telephone and told the rental agent that he had business in San Diego--refuting Keith's claim that not until January 21 or 22 was he first asked to drive Williams to San Diego on a job hunt. Williams drove that car to the January 21 meeting with Davidson. Keith himself confirmed the January 22 meeting in a telephone conversation with Davidson. Keith drove Williams and Robbins from Los Angeles to San Diego on the evening of the 22nd, and for no apparent reason (they had no clothes or luggage) checked into a motel where, armed with a loaded gun, he kept a vigil while Robbins and Williams went to meet with Davidson regarding the alleged "job." When the police arrived at Room 145 and identified themselves, Keith lunged for the gun. Keith's zippered case, containing a small amount of "suspected" methamphetamine, was found in Room 145. Keith testified that he had brought the gun to San Diego, that the substance in the case was his, that he had used methamphetamine on January 22, and was probably under the influence of the drug at the time of his arrest.
 
 
 8
 In light of this evidence, a rational jury could have found implausible Keith's and Williams' testimony that Keith knew nothing about the drug deal and believed he was driving Williams to San Diego on a job hunt. Indeed, the strength of the evidence is enhanced by the very implausibility of those denials. See United States v. Stauffer, 922 F.2d 508, 515 (9th Cir.1990) (in evaluating sufficiency of the evidence, court considered fact that defendant's "implausible testimony provides a basis for the jury to conclude that the opposite of his testimony is true").
 
 
 9
 Because Davidson's hearsay testimony was not important to the government's case and because the other evidence against Keith was ample to support the conviction, we hold that any Confrontation Clause violation was harmless beyond a reasonable doubt.
 
 II
 
 10
 Keith next argues that the exclusion of certain testimony by two defense witnesses denied him his right to a fair trial, his right to effective assistance of counsel, and his right to due process, because it precluded him from mounting a defense.
 
 
 11
 A. Testimony of Susan Lightfoot.
 
 
 12
 When counsel asked Susan Lightfoot whether there was "an event that you're aware of that caused [Keith] to begin carrying a gun" and what that event was, the government objected on the ground that there was no foundation for Lightfoot's personal knowledge of why Keith carried a gun. The court sustained the objection. Counsel argued to the court that she "should be allowed to present my evidence in front of the jury," that there were not sufficient grounds to sustain the objection, and that she was "being rendered ineffective by the court's rulings." Counsel never, however, asked for the opportunity to build a foundation for Lightfoot's knowledge. Apparently attempting to suggest such a foundation, Keith now claims that Lightfoot gave him the gun. But Keith himself testified that a friend named "Allen Huff" gave him the gun.
 
 
 13
 Keith was not denied the opportunity to put on a defense. He testified regarding his neighbor's threat and his reasons for carrying the gun. Keith was denied only the opportunity to put on corroborating testimony, which, because based on sheer speculation, was hardly corroborative. Because counsel failed to show a basis for Lightfoot's knowledge about Keith's reasons for carrying the gun, the court did not abuse its discretion by excluding the testimony.
 
 
 14
 B. Kendall's Testimony.
 
 
 15
 Keith argues that he was entitled to introduce testimony by Williams' lawyer, Nancy Kendall, to corroborate Williams' testimony that Keith was not part of the conspiracy. He claims that the district court abused its discretion in upholding the government's hearsay objection to the testimony because the testimony was admissible under Fed.R.Evid. 801(d)(1)(B) to rebut Judge Tanner's charge that Williams was a liar.
 
 
 16
 Under FedR.Evid. 801(d)(1)(B), an out-of-court statement that is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication, is not hearsay. Here, there was no charge of recent fabrication, and there was no need to rebut the court's accusation that Williams was a liar because the charge was made outside the jury's presence. Rule 801(d)(1)(B), therefore, does not apply and the court's refusal to admit the testimony was not an abuse of discretion. Keith, who offered testimony by both Williams and himself regarding his lack of knowledge, was not denied his opportunity to put on a defense by the exclusion of corroborating hearsay.
 
 III
 
 17
 Next Keith argues that the trial court abused its discretion under Fed.R.Evid. 404(b) because Keith's personal use of methamphetamine was not sufficiently probative of his participation in a conspiracy to purchase large quantities of methamphetamine to satisfy the rule. The government responds that the district court properly permitted the government to question Keith regarding his drug use for impeachment purposes. It argues that Keith's "familiarity with the drug was relevant to disprove his contention that he was a dupe or an innocent bystander," and that his possession and use of the drug on the night he was arrested is relevant to his "credibility and reliability as a percipient witness of events which occurred that night." We conclude that the testimony was admitted and used for impeachment purposes: The government told the district court that it would only bring up the matter to impeach Keith on cross-examination, and that is what it did.
 
 
 18
 We have repeatedly held that Rule 404(b) is a rule of inclusion, and therefore "other acts evidence is admissible whenever relevant to an issue other than the defendant's criminal propensity." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir.1982). Impeachment on cross-examination is one of the uses to which Rule 404(b) evidence may be put. See United States v. Gay, 967 F.2d 322, 328 (9th Cir.1992). When a defendant takes the stand to testify in his own defense, " 'his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination.' " United States v. Palmer, 536 F.2d 1278, 1282 (9th Cir.1976) (quoting Brown v. United States, 356 U.S. 148, 154-55 (1958)). It is within the trial court's discretion to permit cross-examination regarding a defendant witness's personal drug use if such questions are " 'reasonably related to the issues [the defendant] [put] in dispute in his testimony on direct.' " United States v. Palmer, 691 F.2d 921, 922 (9th Cir.1982) (quoting United States v. Miranda-Uriarte, 649 F.2d 1345, 1353 (9th Cir.1981)). In our view, the government's questions regarding Keith's drug use were reasonably related to testimony Keith had given on direct examination, and fairly designed to impeach that testimony.
 
 
 19
 Keith also argues that the court "abused its discretion in failing to engage in the balancing test required under [Fed.R.Evid. 403] to determine whether the prejudicial effect of admitting the evidence of use and possession of methamphetamine outweighed its probative value." He contends that "because the case against Keith was entirely circumstantial, the prejudicial effect of the evidence clearly outweighed any probative value it may have had."
 
 
 20
 There is absolutely nothing in this record from which we may infer that the district court did any sort of Rule 403 balancing before admitting the evidence. In the four colloquies in the record regarding the admission of Keith's drug use, Rule 403 was only mentioned once--at the motion for a mistrial, after the evidence had already been admitted. We conclude, however, that the court's failure to engage in any Rule 403 balancing was invited. The government consistently stated that it would introduce Keith's drug use only for impeachment purposes and only if Keith took the stand, and counsel for Keith stated that she would not contest the admission of the evidence under those circumstances.
 
 
 21
 BENNETT: ... I have no intent to use it in my case in chief, and the only way I would use it is to impeach the defendant if he testifies.
 
 
 22
 COURT: Why are we talking about it then?
 
 
 23
 AARON: Your Honor, I just wanted the Court to be aware of the issue. And I understand that ... if my client testifies on direct examination, that it could be used for impeachment.
 
 
 24
 COURT: If I understand it, the government's not going to use it in opening statement and not going to allude to it unless you fall through the trap door.
 
 
 25
 AARON: Okay. That's fine.
 
 
 26
 BENNETT: That's correct.
 
 
 27
 AARON: I just wanted to make it a matter of record in this Court.
 
 
 28
 By conceding that it was permissible for the government to cross-examine Keith about his prior drug use if that drug use was relevant to impeach Keith's testimony on direct examination, counsel invited the court's failure to engage in Rule 403 balancing. Under circumstances in which the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves of that course of action, this court will regard any error as having been caused by the actions of defense counsel, and review the error under the doctrine of invited error. United States v. Schaff, 948 F.2d 501, 506 (9th Cir.1991).
 
 IV
 
 29
 Keith contends that in numerous instances throughout the trial, Judge Tanner demonstrated bias against him, and thereby prevented his counsel from representing him effectively and denied him a fair trial. Before this court will find that a defendant has been denied his Sixth Amendment rights to effective counsel and a fair trial "because of the conduct of a trial judge in 'rebuking or punishing [counsel]' or otherwise intervening in the proceedings, 'it must appear that the conduct measured by the facts of the case presented together with the result of the trial, was clearly prejudicial to the rights of the party.' " United States v. Bennett, 702 F.2d 833, 836 (9th Cir.1983) (quoting United States v. Eldred, 588 F.2d 746, 750 (9th Cir.1978)) (fair trial); see also United States v. Burt, 765 F.2d 1364, 1368 (9th Cir.1985) (effective assistance of counsel).
 
 
 30
 Most of the conduct of which Keith complains took place outside the presence of the jury. Though such conduct may unnerve counsel, it is not clearly prejudicial. See Burt, 765 F.2d at 1368; Bennett, 702 F.2d at 836. Counsel does cite two incidents that took place in the jury's presence. The first was the court's refusal to permit Williams to consult with his counsel during cross examination. While the record suggests that this action, like much of the judge's conduct, was motivated by bias, Keith does not explain how the judge's instruction that Williams answer the question without consulting his attorney hindered Keith's counsel from representing Keith effectively, or denied Keith a fair trial. The second incident was the judge's admission of Davidson's hearsay testimony regarding his conversation with Biddle, and the judge's response to counsel's request for a sidebar. As discussed in Part I above, the judge's admission of this testimony was proper. To be sure, the judge was quite dismissive of counsel's objections, but in view of the evidence against Keith, the comments did not clearly prejudice Keith's rights.
 
 V
 
 31
 Finally, Keith argues that the federal government's assumption of jurisdiction over his case amounted to a violation of his right to due process. This court lacks authority to review this claim because Keith makes no showing that the decision to charge him in federal court rested on some impermissible basis, such as gender or race. See United States v. Sitton, Nos. 91-50154, 91-50156, 91-50166, 91-50173, 50199, slip op. 7861, 7868, 1992 WL 150926 (9th Cir. July 2, 1992) (citing United States v. Redondo-Lemos, 955 F.2d 1296, 1300-01 (9th Cir.1992)).
 
 
 32
 Keith's conviction is AFFIRMED.
 
 
 
 *
 The Honorable Vaughn R. Walker, United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3